**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**SOUTHERN SILK MILLS, Inc., Respondent.**

**No. 11898.**

United States Court of Appeals Sixth Circuit.

April 2, 1957.

See also 6 Cir., 210 F.2d 824.

Stephen Leonard, Washington, D. C. (Kenneth C. McGuiness, Marcel Mallet-Prevost, Frederick U. Reel and Louis Schwartz, Washington, D. C., of counsel), for petitioner.

C. P. Swafford, Dayton, Tenn. (Frantz, McConnell & Seymour, Knoxville, Tenn., Harold M. Humphreys, Chattanooga, Tenn., Robert Kemmer, Spring City, Tenn., C. P. Swafford, Dayton, Tenn., of counsel), for respondent.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

On December 21, 1953 this court granted enforcement of the order of the National Labor Relations Board which directed the respondent, among other things, to reinstate certain employees, and to make them whole for any loss of pay they may have suffered because of their illegal discharge. N. L. R. B. v. Southern Silk Mills, 6 Cir., 209 F.2d 155, certiorari denied 347 U.S. 976, 74 S.Ct. 787, 98 L.Ed. 1115. The reinstatement provisions of the decree have been satisfied.

Agreements on back pay were reached by respondent with 38 of the 40 employees involved. The respondent was unable to reach an agreement with the other two employees, Irene M. Hill and Effie Reed Fugate, and the Board conducted a hearing to determine the losses suffered by these employees. The Board found that Hill had suffered a net loss of $6,536.62 and Fugate a net loss of $5,666.64. The proceeding is again before the court on the Board's motion for a supplemental decree specifying these amounts as due these two employees.

The respondent challenges each award on the ground that the employee was wilfully idle during the entire back-pay period and that the Board did not give respondent credit for what the employee would have earned in other suitable employment if she had engaged in such employment instead of remaining idle.

The respondent manufactures women's apparel in Spring City, Tenn., a town of about 1600 population. Hill and Fugate lived in Spring City and were employed as knitters at respondent's plant. There was no factory employment available for women in Spring City except at respondent's plant. At the time of her discharge on May 1, 1951 Hill was 28 years old and married. In October 1951 she moved to Chattanooga, Tenn. She returned to Spring City from March until May 1952. From May to September 1952 she lived in Detroit, Michigan. She returned to Spring City in September 1952. In October 1952 she moved to Chattanooga. In November 1953 she returned to Spring City where she remained until re-employed by respondent on June 7, 1954.

Fugate was also discharged on May 1, 1951. It was stipulated that the cut-off date for her was November 27, 1953, when she stopped looking for work because she had been rejected so often because of her age. The record does not show how old she was. She resided in Spring City during the entire period of her discharge.

At the time of the discharges Hill was being paid 80 cents an hour and Fugate was being paid 95 cents an hour. At these rates, Hill would have earned $6,536.62 during the period of unemployment and Fugate would have earned $5,666.64. Neither Hill nor Fugate had any offsetting earnings during their periods of discharge.

The Trial Examiner found that the two employees made reasonable efforts to secure substantially equivalent positions, both as to type and salary, to those from which they were discharged, but were not able to do so. The Board adopted this finding and made the awards in their respective gross amounts. We are of the opinion that this finding of fact is supported by substantial evidence on the record considered as a whole, and is accepted by us. Section 160(e), Title 29, U.S.C.A. However, there is presented for consideration whether this finding was sufficient to support the awards.

The Trial Examiner ruled that it was to be expected that a discharge should continue for a certain period to seek positions at least equal to his prior position, both as to salary and other working conditions; that if he were to immediately accept a position at a substantially lower salary he might face a defense that he did not exercise proper care and diligence by doing so; yet there comes a time after opportunities for comparable jobs have been canvassed without success, when the job applicant must lower his sights or face a long period of idleness. He pointed out that the two employees were discharged May 1, 1951 and spent the next seven months in a fruitless search for comparable factory employment. He ruled that at that point, namely, January 1, 1952, they should have sought lower paying positions, which, although not "desirable" from the salary standpoint, would have been satisfactory employment for one of their training, experience and background. He held that because of their lack of training and experience, there was no obligation upon them to obtain farm labor work or positions as waitresses or chambermaids. But he pointed out there was available employment at the South-

ern Freezing and Preserving Company in Dayton, where one of their fellow dischargees had obtained employment, and that they had made no effort to obtain employment in the retail trades which in all probability would have furnished satisfactory employment at a lower rate of pay. He accordingly allowed offsetting deductions from January 1, 1952 on for amounts which in his opinion they probably could have earned in such lower paid employment. The Board refused to approve the Examiner's ruling, holding that there was no obligation on the part of a discriminatee to lower his sights and accept a lower paying position, and that the obligation to minimize his loss of earnings is satisfied if he makes reasonable efforts to find new employment which is substantially equivalent to the position from which he was discharged and is suitable to a person of his background and experience.

■ If the Board's ruling on this legal issue applicable to back-pay awards is not the correct one, its finding that these two dischargees made reasonable efforts to secure "substantially equivalent" positions is not decisive of the case. The Board has made no finding with respect to their efforts to obtain satisfactory, although lower-paid, employment in other available fields.

■■ In Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 197–200, 61 S.Ct. 845, 854, 85 L.Ed. 1271, the Supreme Court approved a back-pay order of the Board which fixed the amount at what the employee normally would have earned if not discharged less his earnings during the discharge period. The Court said: "Since only actual losses should be made good, it seems fair that deductions should be made not only for actual earnings by the worker but also for losses which he willfully incurred." It also referred to the opportunity of the Board to "give appropriate weight to a clearly unjustifiable refusal to take desirable new employment." In N. L. R. B. v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S. Ct. 287, 97 L.Ed. 377, the Court said that in making back-pay awards, the Board must have regard for considerations governing the mitigation of damages. See: N. L. R. B. v. Stilley Plywood Co., 4 Cir., 199 F.2d 319, 321. This does not expressly answer the question now presented. Restatement, Contracts, Sect. 336(1) (d). We are of the opinion, however, that the usual wage earner, reasonably conscious of the obligation to support himself and family by suitable employment, after inability over a reasonable period of time to obtain the kind of employment to which he is accustomed, would consider other available, suitable employment at a somewhat lower rate of pay "desirable new employment." The fact that a married woman employee is being supported by her husband during the discharge period should not relieve her of the obligation to accept suitable employment. The failure of these two employees, under the conditions existing in the present case, to seek or take other suitable, available employment, although at a lower rate of pay, over a period of approximately three years, constitutes to some extent at least loss of earnings "willfully incurred." We are of the opinion that the Board was in error in making the back-pay awards without offsetting credits against such losses. N. L. R. B. v. Pugh & Barr, Inc., 4 Cir., 207 F.2d 409; N. L. R. B. v. Moss Planing Mill Co., 4 Cir., 224 F.2d 702; N. L. R. B. v. Alaska S.S. Co., 9 Cir., 211 F.2d 357, 360–361. When such credits should begin and in what amounts they should be allowed are questions which should receive the consideration of the Board.

Enforcement of the Board's order is denied and the case is remanded to the Board for additional findings with respect to this issue, with leave to the parties to present further evidence if so desired.