Mary Juanita SELLERS,
Plaintiff-Appellant,

v.

**DELGADO COLLEGE and the State of Louisiana, et al., Defendants-Appellees.**

No. 84–3877.

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1986.

George M. Strickler, Jr., New Orleans, La., for plaintiff-appellant.

Eavelyn T. Brooks, Asst. Atty. Gen., Dept. of Justice, New Orleans, La., for defendants-appellees.

Before REAVLEY, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Mary Juanita Sellers won her Title VII suit but appeals the damage award. The magistrate's findings do not sufficiently explain the measure used to determine the award, and they leave uncertain the basis on which the damage period for both back pay and front pay was restricted. Persuaded that the findings are inadequate to allow us to uphold the award, we vacate the judgment and remand for trial of damages.

I

In July 1975, when Sellers was hired as a public relations officer by Delgado College, a state school in Louisiana, she had a bachelor's degree and had completed the necessary coursework for a master's degree in journalism. Her starting salary for a nine-month school year was about $9,000.00, but she also worked through the summer and was paid an additional $3,000.00. Classified as an "Instructor," her duties included preparing press releases, brochures, and other material advertising events at the college, and working on school publications. She repeatedly asked for a formal job description, but she received none. She thought that she had responsibility for all public relations for the college.

In July 1976, Delgado hired Michael Whittier to work as an "Assistant Professor" with a nine-month salary of $10,500.00. Whittier had a master's degree and had experience writing for newspapers and preparing public relations material for a medical college. Whittier's activities soon encroached on Sellers' work, and by mid-1977 Whittier had assumed much of the responsibility for the public relations efforts of Delgado College. Correspondingly, relations between the college and Sellers deteriorated. For the first time her work was criticized. She lost much of her public relations responsibility and was given additional teaching tasks with no extra pay. In November 1977, at a meeting of the school's public relations personnel, the college president, Dr. Marvin E. Thames, introduced Whittier as "Coordinator of Information Services." This left Sellers in doubt about her role at Delgado, and she sought clarification from Dr. Thames. He did not respond to Sellers's numerous attempts to speak with him.

Sellers tendered her resignation to President Thames in January 1978, to be effective on February 15, 1978; on January 26, 1978 she filed a charge with the EEOC, alleging wage discrimination because of her sex and asserting that she had been constructively discharged. Dr. Thames did not communicate with Sellers other than to accept her resignation on February 14, 1978. After receiving her right to sue letter from the Commission, she initiated this action.

The case was tried by consent to a magistrate, who found that Sellers had been discriminated against on the basis of her sex, a finding not disputed here. The magistrate awarded Sellers monetary relief in two parts, characterized as back pay and front pay. For the period of time between May 16, 1977, an unexplained date, and February 15, 1978, when Sellers was terminated, the magistrate awarded Sellers "back pay" of $2,044.50. The magistrate also awarded Sellers $18,200.00 as "front pay," finding that this was the amount that Whittier earned in the year following Sellers's termination.

II

The magistrate failed to distinguish between two distinct theories of discrimination, and thus contributed to difficulty in deciding the proper damage period. In *County of Washington v. Gunther*, 452 U.S. 161, 181, 101 S.Ct. 2242, 2253, 68 L.Ed.2d 751 (1981), the Supreme Court held that a female's claim for intentional wage discrimination based on sex can be made out under Title VII without proof that she was paid less than a male employee for the same work. Although we do not so decide, Delgado's liability might have rested on a *Gunther* theory because Sellers presented evidence suggesting a pattern of pay discrimination against women. There was,

however, also evidence that Whittier was paid more than Sellers for the same work, and this evidence could have been the basis for a classic equal pay award. *See generally Plemer v. Parsons-Gilbane*, 713 F.2d 1127 (5th Cir.1983). If liability is premised on an equal pay theory, Sellers must show that she and Whittier performed essentially the same jobs but received different pay; the degree to which their tasks overlapped and the time at which the overlap occurred may be relevant to when the back pay period should begin. If, however, Delgado is guilty of *Gunther* discrimination, Sellers' damage period will begin when the discriminatory animus found expression in her lesser pay, perhaps at the time she was hired. The magistrate must therefore explain whether liability is based on an equal pay or a *Gunther* theory of discrimination.

There are two other flaws in the magistrate's back pay award, which should be avoided on remand. Back pay is a routine remedy in discrimination cases and is awarded when needed to make the victim of discrimination economically whole. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–22, 95 S.Ct. 2362, 2372–74, 45 L.Ed.2d 280 (1975). Back pay may be awarded for a period beginning not more than two years before the filing of the EEOC claim and may extend to the date of judgment. 42 U.S.C. § 2000e–5(g). The magistrate did not explain why the back pay period ran from May 16, 1977, about nine months before the EEOC charge was filed. He seems to have thought that he should begin the back pay period when the duties of Michael Whittier and Sellers became substantially the same, which he said had occurred "by mid-1977." Still, this does not explain the date of May 16, 1977. Furthermore, the magistrate failed to explain why the back pay period ended when Sellers resigned on February 15, 1978. There was uncontradicted evidence that Sellers tried unsuccessfully to find work in public relations for a substantial period of time thereafter. While the magistrate awarded a sum, $18,200.00, that he believed Sellers should have earned had she continued for another year at Delgado, the award rested on an incomplete record and was not adequately explained. The inadequate record may be explained by the misapprehension of the parties that they were trying only the liability issue and that damages were to be tried later.

Relatedly, the magistrate mislabled the $18,200.00 award as "front pay." Front pay, which is "an award equal to the estimated present value of lost earnings that are reasonably likely to occur between the date of judgment and the time when the employee can assume his new position," *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976), is "calculated to terminate on the date a victim of discrimination attains an opportunity to move to his 'rightful place' rather than on the date the order granting relief is entered," *James v. Stockhom Valves and Fittings Co.*, 559 F.2d 310, 358 (5th Cir.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts. The magistrate characterized part of the back pay award as front pay, and he made no true front pay award. On remand, the court will reconsider the back pay award. Although we do not suggest that the plaintiff is entitled to front pay, the district court is free on remand to consider such a claim.

### III

The defendants argue that Sellers failed to preserve her claim to interest and fringe benefits on appeal. Because back pay relief was inextricably entwined with considerations of fringe benefits and interest, the pro se notice of appeal was sufficient to preserve these issues. *C.A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir.), *cert. denied*, 454 U.S. 1125, 102 S.Ct. 974, 71 L.Ed.2d 112 (1981). Fringe benefits and interest will be reconsidered on remand.

## IV

The finding of liability was detailed in the magistrate's findings and is not appealed. But the findings are inadequate to support the damage award and the record is uncertain as to the measure used. We therefore vacate the judgment and remand the case for a trial on damages. The parties will have a full opportunity to develop the issues relevant to Sellers's compensation, including fringe benefits and interest. The trial court is free in its discretion to allow additional discovery.

VACATED and REMANDED.