**Mary Juanita SELLERS,**
**Plaintiff–Appellant/Cross–Appellee,**

v.

**DELGADO COMMUNITY COLLEGE**
**and State of Louisiana,**
**Defendants–Appellees/Cross–Appellants.**

**Nos. 86–3786, 87–3215.**

United States Court of Appeals,
Fifth Circuit.

March 18, 1988.

George M. Strickler, Jr., New Orleans, La., for plaintiff-appellant/cross-appellee.

Kendall L. Vick, Asst. Atty. Gen., New Orleans, La., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., Louisiana Dept. of Justice, New Orleans, La., for defendants-appellees/cross-appellants.

Before SNEED,* REAVLEY, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Successful in her Title VII employment discrimination suit, plaintiff Mary Sellers appeals the magistrate's damage award for a second time. In addition, Sellers appeals the magistrate's order awarding her attorney's fees at a lower rate then requested. Defendant Delgado Community College

* Circuit Judge of the Ninth Circuit, sitting by designation.

(Delgado) also appeals the orders by the magistrate awarding Sellers back pay and attorney's fees. Because we perceive error in the magistrate's determination of damages, we vacate the judgment and remand for a redetermination of damages. However, discerning no error in the magistrate's order awarding Sellers attorney's fees, we affirm that order.

## I. FACTS AND PROCEDURAL HISTORY

In 1982, plaintiff Mary Sellers brought this employment discrimination suit against her previous employer, Delgado, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* After the case was tried by consent before a magistrate, the court entered a judgment finding that Sellers' rights under Title VII had been violated when she had been paid less than a comparably qualified male employee who performed essentially the same job as Sellers. Additionally, the magistrate found that Sellers had been constructively discharged in violation of Title VII.

Following the determination on the merits, the magistrate awarded Sellers back monetary relief. Sellers appealed that award. This Court, concluding that the magistrate's findings were inadequate to support the award, vacated the judgment and remanded for a trial on the damages. *Sellers v. Delgado Community College, et al.,* 781 F.2d 503 (5th Cir.1986). On remand, the magistrate conducted an evidentiary hearing to develop facts pertinent to Sellers' claims for back pay and front pay. As the facts surrounding the constructive discharge of Sellers by Delgado in 1978 are accurately set forth in this Court's previous opinion, *Sellers,* 781 F.2d at 504, we will not reiterate those facts at this time except as relevant to the calculation of Sellers' back pay award.

Sellers was initially employed by Delgado in 1975. Referred to by some as the Director of Public Information for the college, Sellers' responsibilities included preparing press releases and brochures, and working on school publications. Additionally, Sellers worked on material advertising events and generally coordinated the public relations efforts of Delgado. On July 1, 1976, Delgado hired Michael Whittier, who eventually assumed much of the responsibility for the public relations efforts of Delgado, thereby encroaching on Sellers' work. By May 1977, Whittier and Sellers were performing substantially the same job duties.

Following her unlawful discharge from Delgado in February 1978, Sellers completed the requirements for her master's degree in journalism in July of that same year. Sellers testified that between February 1978 and July 1981 she attempted to find public relations work, but to no avail. The magistrate found Sellers' first documented attempt at obtaining comparable employment to be a letter in October 1978 reflecting an interview at McDonnel Douglas. During this time, however, Sellers was able to obtain a few temporary clerical and secretarial jobs while she continued to look for public relations work.

In July 1981, Sellers was hired as secretary to a public relations officer for Gulf Oil Company in New Orleans, but was subsequently transferred to Gulf's Office of Comptroller as an executive secretary when the public relations office in New Orleans closed. Thereafter, in December 1982, Sellers voluntarily resigned from Gulf, receiving a severance payment of one month's salary. Sellers testified that she left Gulf because there was no chance of advancement to a professional position at Gulf and, if she did not resign, she would be laid off in the future without severance benefits. Following her resignation from Gulf, Sellers continued to seek employment in the public relations field and in November 1983, obtained employment as a "biscuit instructor" at Popeye's Fried Chicken. In August 1984, Sellers resigned from Popeye's and moved to Dallas to seek public relations work. However, by October 1986, Sellers was unable to obtain employment comparable to her position at Delgado, despite her efforts to do so.

After the evidentiary hearing on damages in May 1986, the magistrate awarded back monetary relief to Sellers, calculating

the award of back pay by comparing Sellers' earnings with those of Whittier during the same period. For the period between May 1977, the date the duties of Sellers and Whittier merged, and December 1982, the date Sellers resigned her position at Gulf, the magistrate awarded Sellers the difference between Sellers' earnings and those of Whittier. However, the magistrate "tolled" Sellers' back pay award between January 1983 and November 1983, the period immediately following Sellers' resignation from Gulf, concluding that Sellers effectively removed herself from the job market by resigning from Gulf and thereby failed to mitigate her damages. Between November 1983 and July 1984, the period Sellers was employed as a "biscuit instructor" at Popeye's, the magistrate concluded that Sellers had "reentered" the job market and was therefore entitled to back pay; however, the magistrate calculated the award by comparing Whittier's earnings with those Sellers would have been earning had she remained at Gulf, reasoning that "it is probable that [Sellers] would still be working at Gulf had she not quit."

The magistrate further "tolled" Sellers' back pay award for the period between July 1984 and December 1984, once again concluding that Sellers had effectively removed herself from the job market by resigning from Popeye's. Determining that Sellers had reentered the job market as of January 1985, the magistrate awarded back pay after that date, but again based on what Sellers would have been earning had she retained her position at Gulf. The magistrate also awarded Sellers lost retirement and health benefits, less the amount of benefits earned during the time Sellers' back pay award was tolled.

As to Sellers' claim for front pay, the magistrate concluded that had Sellers remained at Gulf, she would more than likely have obtained her "rightful place" by the date of the evidentiary hearing in May 1986 and therefore, denied front pay. Additionally, the magistrate denied a request by Sellers for prejudgment interest on her back pay award, holding that "although the facts were sufficient to support a finding

of constructive discharge, there was no evidence that (Delgado's) officers intended by their discriminatory actions that (Sellers) resign or be fired." Both Sellers and Delgado appeal the magistrate's damage award to this Court.

On appeal, Sellers contends that the magistrate erred in (1) treating her resignations from Gulf and Popeye's as failures to mitigate damages and thereby reducing her back pay award; (2) denying prejudgment interest on the award of back pay; and (3) denying her claim for front pay, despite the fact that she has been unable to obtain employment substantially comparable to the position she held at Delgado. On cross-appeal, Delgado asserts that the magistrate erred in awarding Sellers back pay (1) when the evidence allegedly proves she would not have received a salary comparable to that of Whittier even absent discrimination; (2) when she was not justified in leaving Delgado; and (3) when she failed to mitigate her damages by diligently seeking employment. Delgado further contends that the magistrate erred by awarding back pay to Sellers on the basis of a finding that Delgado did not demonstrate that there were any substantially comparable positions available to Sellers during the period she allegedly failed to mitigate damages.

## II. DISCUSSION

### A. *Back Pay Award*

Section 706(g) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(g) permits an award of back pay to victims of unlawful discrimination. In pertinent part, section 706(g) provides:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay,.... Back pay liability

shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

The Supreme Court has noted that under section 706(g), back pay is not an automatic remedy, but is equitable in nature and may be invoked in the sound discretion of the district court. *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 226, 102 S.Ct. 3057, 3063, 73 L.Ed.2d 721 (1982). This discretion, however, must be exercised in light of the large objectives of the Act, and, "must be guided by 'meaningful standards' enforced by 'thorough appellate review.'" *Id.* (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975)).

■ A back pay award, as all damages awarded pursuant to Title VII, should make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination. *EEOC v. Guardian Pools, Inc.*, 828 F.2d 1507, 1510 (11th Cir.1987). *See also Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 626 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). Addressing the standards governing back pay awards, the Supreme Court has stated

> given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

*Albemarle Paper*, 422 U.S. at 421, 95 S.Ct. at 2373. "Thus, in the absence of exceptional circumstances, backpay should always be awarded when a Title VII violation is found" and the instances wherein such an award is not granted are exceedingly rare. *Rasimas*, 714 F.2d at 626.

Of course, individuals who have been unlawfully discharged in violation of Title VII are not without their responsibilities under the Act. The Supreme Court outlined those responsibilities in *Ford Motor Co. v. EEOC*, concluding that Title VII claimants are subject to a statutory duty to minimize damages by using reasonable diligence to find other suitable employment. *Ford Motor Co.*, 458 U.S. at 231, 102 S.Ct. at 3065.[1] However, the Supreme Court declined to impose upon an unemployed Title VII claimant a duty to seek employment which is not substantially comparable to the position from which he was unlawfully discharged. In this regard, the Court in *Ford* expressly stated, "[a]lthough the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he was denied." *Id.* at 231–32, 102 S.Ct. at 3065–66. The Supreme Court did recognize that claimants often take other lesser or dissimilar work during the pendency of their Title VII claims; nevertheless, "doing so is not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Id.* at 231 n. 14, 102 S.Ct. at 3065 n. 14. *See also Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1234–35 (7th Cir.1986); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1158 (6th Cir.1985); *EEOC v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir. 1984) (quoting *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307 (D.C.Cir.1972) (emphasis in original)) ("The duty to minimize damages, however, does not *obligate* the employee to accept a position that 'is not consonant with his particular skills, background, and experience' or 'which involves conditions that are substantially more onerous than his previous position.'").

■ An issue which the Supreme Court did not specifically address in *Ford* is whether a Title VII claimant, accepting noncomparable employment during the

---

1. In this respect, § 706(g) provides, in pertinent part, that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

pendency of his claim, is under an obligation to remain in that noncomparable position to satisfy the duty to mitigate under Title VII. However, we take guidance from the Court's statement that an obligation to take lesser or dissimilar work during the pendency of a Title VII claim is "not mandated by the statutory requirement that a claimant minimize damages or forfeit his right to compensation." *Ford,* 458 U.S. at 231 n. 14, 102 S.Ct. at 3065 n. 14. The natural concomitant of the Supreme Court's holding that a Title VII claimant is not under an obligation to accept noncomparable employment is that the same claimant is not obligated to remain in an inferior position should he be fortunate enough to obtain one during the pendency of his claim. If the ruling were otherwise, the remarkable proposition would be established that although Title VII claimants are not obligated to accept a noncomparable position, if an individual does so out of financial necessity or for any other reason, a duty to mitigate would require the claimant to remain in that position.

In *EEOC v. Guardian Pools, Inc.,* the Eleventh Circuit addressed the scope of a Title VII claimant's duty to mitigate. In *Guardian Pools,* the claimant held several noncomparable positions during the back pay period. The defendant employer argued on appeal that the back pay period should be shortened because the claimant had removed herself from the labor market by resigning from a noncomparable position because of dissatisfaction with the work. The Eleventh Circuit rejected the employer's contention, stating:

> We reject Guardian's argument that the period should be reduced because Crozier

left her next position after a short period of time. Title VII requires reasonable diligence in locating employment and mitigating damages; *it does not require that a person remain employed despite dissatisfaction.*

*Id.* at 1511 (emphasis added). In a similar vein, the Seventh Circuit held in *Wheeler v. Snyder Buick, Inc.,* that the duty to mitigate damages does not preclude a Title VII plaintiff from quitting a position in a different business that pays substantially less money. *Wheeler,* 794 F.2d at 1234–35. This Court has already determined that a Title VII claimant's obligation to mitigate damages does not require that the claimant accept a position noncomparable or inferior to his previous position. *See Exxon Shipping,* 745 F.2d at 978. Today, we conclude that the duty to mitigate does not require a Title VII claimant to remain in a noncomparable position accepted during the pendency of his claim. Since Title VII claimants are currently not obliged to accept noncomparable employment, a rule requiring these individuals to remain in such positions, once accepted, would effectively deter claimants from seeking or accepting any type of noncomparable work.[2] It follows then, in the instant case, that while any earnings Sellers received from interim noncomparable employment should be deducted from an award of back pay, Sellers had a duty to use reasonable diligence to obtain only that employment which was substantially comparable to her position at Delgado.

In the instant case, the magistrate held that Sellers' resignations from Gulf and Popeye's constituted a failure to mitigate damages and therefore, tolled Sellers' back

---

**2.** We note that, in seeking to reduce Sellers' back pay award, Delgado maintains that a Title VII claimant, who over an extended period of time is unable to find comparable employment, must eventually "lower his sights" and mitigate losses by accepting noncomparable but suitable employment. However, a careful analysis of the cases relied on by Delgado in this regard reveals that the opinions do not adopt a rule which would require claimants who accept noncomparable employment to remain in those positions despite dissatisfaction. Rather, the cases promulgate a rule which guards against claimants sitting idle and doing nothing, not against

those individuals who periodically accept interim inferior employment, but leave that employment at a later date to seek comparable employment. *See Brady v. Thurston Motor Lines,* 753 F.2d 1269, 1273 (4th Cir.1985); *NLRB v. Madison Courier, Inc.,* 472 F.2d 1307, 1320–21 (D.C. Cir.1972); *NLRB v. Southern Silk Mills,* 242 F.2d 697, 700 (6th Cir.), *cert. denied,* 355 U.S. 821, 78 S.Ct. 28, 2 L.Ed.2d 37 (1957). In the instant case, Sellers did "lower her sights" by accepting temporary clerical work, the initial position at Gulf and the position as "biscuit instructor" at Popeye's.

pay award for those periods. Thus, the proper inquiry becomes whether Sellers' positions at Gulf and Popeye's were substantially comparable to her position at Delgado. If so, Sellers' failure to remain in those positions may have constituted a failure to mitigate damages. However, if the positions were not substantially comparable, the magistrate erred in tolling Sellers' back pay award after her resignations from Gulf and Popeye's.

■ The determination of whether or not a Title VII claimant uses reasonable diligence in obtaining substantially comparable employment is a determination of fact by the district court which is subject to the "clearly erroneous" standard of Fed.R. Civ.P. 52(a). *Marks v. Prattco*, 633 F.2d 1122, 1125 (5th Cir.1981). Once a Title VII claimant has established damages as a result of the discriminatory act of an employer, the burden of proving that the plaintiff has not exercised diligence in seeking comparable employment rests on the employer. *Id. See also Shore*, 777 F.2d at 1158; *Rasimas*, 714 F.2d at 623.

"Substantially equivalent employment" for purposes of Title VII mitigation has been defined as employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated. *Rasimas*, 714 F.2d at 624. In addition, the new position should provide comparable hours to the previous position. *McCann Steel Co. v. NLRB*, 570 F.2d 652, 655 (6th Cir. 1978). In *Rutherford v. American Bank of Commerce*, 12 Fair Empl.Prac.Cas. (BNA), 1184, 1190 (D.N.M.1976) [Available on WESTLAW, 1976 WL 542], *aff'd*, 565 F.2d 1162 (10th Cir.1977), the court determined that the claimant did not fail to mitigate her damages when she refused an offer of employment because it failed to take account of her years of experience and offered only remote possibilities for comparable advancement. Furthermore, in seeking to define what is suitable interim employment for an unlawfully discharged employee, the Circuit for the District of Co-

lumbia stated "[a] discriminatee need not seek or accept employment which is 'dangerous, distasteful or essentially different' from his regular job" *or* "accept employment which is located an unreasonable distance from his home." *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1319 (D.C.Cir. 1971) (emphasis in original). Finally, in assessing whether two positions are substantially comparable, at least one court has focused on comparability in status, rather than comparability in pay, determining that comparability in salary, although important, is not the sole test of a reasonable offer of alternative employment. *Williams v. Albemarle City Board of Education*, 508 F.2d 1242, 1243 (4th Cir.1974). In fact, "[c]omparability in status is often of far more importance—especially as it relates to opportunites for advancement or for other employment—than comparability in salary." *Id.*

■ In the instant case, the magistrate concluded that the position which Sellers obtained as secretary at Gulf Oil was substantially comparable to her previous position in public relations at Delgado. Reviewing this finding under the deferential standard set forth above, we are constrained to conclude that the finding by the magistrate that the two positions were substantially comparable is clearly erroneous. The positions were not equivalent in terms of pay, status, responsibility, working conditions, or promotional opportunities.

As a coordinator of public relations at Delgado, Sellers prepared press releases and brochures, worked on school publications, and generally coordinated the public relation efforts of Delgado. In contrast, the position which Sellers held at Gulf was "basically a clerical type job" which involved typing and filing. No educational requirement existed for Sellers to obtain her position at Gulf; in fact, the primary qualification for the job was the ability to type. Of prime importance is the fact that scant promotional opportunities were available to Sellers at Gulf. Although Sellers frequently inquired about the possibility of obtaining public relations work at Gulf, the public relations office for Gulf was subse-

quently closed, thereby eliminating the possibility of promotion to that area of the company. As to comparability in salary, when Sellers began work at Gulf, she earned approximately $21,000.00 per year. By contrast, Michael Whittier, who had obtained Sellers' previous position at Delgado, was earning $28,000.00 per year and by 1983, he was earning $32,675.00 per year.

■ Therefore, since we today conclude that a Title VII claimant's duty to mitigate damages does not encompass remaining in a noncomparable position while continuing to seek suitable employment, the magistrate erred when he tolled Sellers' back pay award due to her resignation from a noncomparable position at Gulf. For the same reasons, the magistrate erred in his decision to toll the back pay award on the basis of Sellers' resignation as "biscuit instructor" at Popeye's, a position clearly not comparable to her position at Delgado. Finally, when the magistrate did award back pay to Sellers, during the periods he deemed her to have reentered the job market subsequent to her resignations from Gulf and Popeye's, the magistrate premised his back pay award on the amount Sellers would have been earning had she retained her position at Gulf. Since we have concluded that Sellers' position at Gulf was not comparable to her position at Delgado, the magistrate erred by using Sellers' earnings at Gulf as a basis for comparison in awarding back monetary relief during those periods.

On cross-appeal, Delgado asserts that the magistrate erred in awarding Sellers any back pay due to her alleged failure to mitigate damages by diligently seeking employment. Specifically, Delgado mentioned that Sellers spent most of her time immediately following her unlawful discharge from Delgado pursuing her master's degree. Additionally, Delgado points to what it perceives to be an inadequate number of job contacts made by Sellers during the relevant period, which it asserts reflects a lack of diligence on her part in conducting a job search. Finally, Delgado asserts that the magistrate erred in awarding back pay to Sellers on a finding that Delgado failed to satisfy its burden of proving the availability of substantially equivalent positions to Sellers during the relevant period.

Addressing the latter point first, by alleging that the magistrate erred in requiring Delgado to present evidence of available suitable employment, Delgado attempts to have this Court abrogate the current rule that the employer in a Title VII case has the burden of proving that a claimant has not exercised due diligence in seeking comparable employment after an unlawful discharge. *Marks*, 633 F.2d at 1125. To meet this burden, it has been consistently held that an employer must demonstrate that comparable work was available and the claimant did not seek it out. *See Hanna v. American Motors Corp.*, 724 F.2d 1300, 1307 (7th Cir.), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); *Rasimas*, 714 F.2d at 623–24; *Jackson v. Shell Oil Co.*, 702 F.2d 197, 201–02 (9th Cir.1983).

■ If an employer proves that an employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment. *See Madison Courier*, 472 F.2d 1307. In the instant case, however, Delgado failed to prove that Sellers failed to use diligence in conducting a job search; therefore, Delgado was not relieved of its burden of proving the availability of suitable employment. The magistrate stated only that the evidence "might arguably support a finding that [Sellers] was not diligent in mitigating damages at a time prior to her employment at Gulf," not that the evidence *did* establish such a finding. Unfortunately, because of the magistrate's equivocal finding on this issue, we must at this time direct that the magistrate make a specific finding regarding Sellers' efforts to mitigate on remand. Without such a specific finding, effective appellate review of Delgado's contentions pertaining to Sellers' diligence in mitigating damages is not feasible.

In sum, because we conclude that the magistrate improperly "tolled" Sellers' back pay award following her resignations from noncomparable employment, and be-

cause we reject Delgado's contentions on cross-appeal, we vacate the judgment regarding the back pay award and remand for a redetermination of damages. We recognize that the magistrate relied on factors in tolling Sellers' back pay award,[3] other than her resignations from Gulf and Popeye's; however, perceiving the resignations to be the primary basis for the magistrate's decision, we remand. On remand, the magistrate is free to make new findings regarding the damage award. In making these findings, the magistrate may take additional evidence and shape a judgment accordingly.[4]

### B. *Prejudgment Interest*

■ Sellers further contends on appeal that the magistrate erred when he denied her prejudgment interest on the award of back pay. While prejudgment interest is available on back pay awards in Title VII cases, the decision to award such interest rests within the sound discretion of the district court. *Bunch v. Bullard*, 795 F.2d 384, 399 (5th Cir.1986). Accordingly, we will not overturn the district court's determination in the absence of an abuse of discretion. However, just as an award or denial of back pay by the district court must be guided by sound legal principles, so also must a decision on prejudgment interest be similarly guided.

This Circuit has consistently approved awards of prejudgment interest by the district court in Title VII cases so as to make whole the injured party. *See Bunch*, 795 F.2d at 399; *Parson v. Kaiser Aluminum Chemical Corp.*, 727 F.2d 473, 478 (5th Cir.), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984); *Whiting v. Jackson State University*, 616 F.2d 116, 127 n. 8 (5th Cir.1980); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 263 (5th Cir.1974), *cert. denied*, 467 U.S. 1243,

104 S.Ct. 3515, 82 L.Ed.2d 824 (1984), *cert. dism'd*, 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 833 (1984). In fact, this Court stated in *Pettway* that interest is an item that *should be included* in back pay. *Pettway*, 494 F.2d at 263.

In the instant case, the magistrate denied prejudgment interest on the back pay award, reasoning that although the facts supported a finding of constructive discharge by Delgado, there was no evidence that Delgado's officers intended by their discriminatory actions that Sellers resign or be fired. In *Young v. Southwestern Savings and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir.1975), this Court addressed the issue of constructive discharge, stating:

> The general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is *as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.*

(emphasis added).

Consistent with this Court's previous explanation in *Young* of the concept of constructive discharge and the liability attendant with such action, we conclude that the magistrate abused his discretion in denying prejudgment interest on the basis that Delgado did not intend by its actions that Sellers resign or be fired. The magistrate's holding suggests that employers who constructively discharge their employees are somehow less guilty of violations of Title VII than employers who formally discharge their employees. Such a result would be inconsistent with the policy and objectives of Title VII to make whole the victims of unlawful discrimination so far as

---

**3.** Specifically, the magistrate cited what it believed to be Sellers' continual attempts to seek jobs for which she was not qualified, her failure to place advertisements, and to contact private agencies. The court also believed Sellers' resignation from her position at Gulf, a position which we believe not comparable to her position at Delgado, to be a significant factor to the weakening of her job prospects for the future.

**4.** Due to our disposition vacating the back pay award and directing the magistrate to make further and more specific findings, we do not address Delgado's remaining contentions on cross-appeal challenging the magistrate's award of back pay.

possible. *Ford,* 458 U.S. at 230, 102 S.Ct. at 3065.

### C. *Front Pay*

■ Sellers further asserts that the magistrate erred in denying her claim for front pay under the circumstances of this case. In his findings and conclusions denying such relief to Sellers, the magistrate reasoned that had Sellers remained in her position as secretary at Gulf, she would have achieved her "rightful place" by the time of hearing.

In *James v. Stockham Valves and Fittings Co.,* 559 F.2d 310, 358 (5th Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978), this Court stated that "a monetary award [of front pay] is calculated to terminate on the date a victim of discrimination attains an opportunity to move to his 'rightful place' rather than on the date the order granting relief is entered." Further, the decision to award or deny front pay is a discretionary one, resting with the district court; however, the court should apply an appropriate analysis for Title VII cases, inquiring if the award will aid in ending illegal discrimination. *Shore,* 777 F.2d at 1159. The *Shore* case defined front pay as follows:

> Front pay has been defined as 'an affirmative order designed to compensate the plaintiff for economic losses that have not occurred as of the date of the court decree, but that may occur as the plaintiff works toward his or her rightful place.'

*Id.* at 1158 (quoting Note, *Front Pay—Prophylactic Relief under Title VII of the Civil Rights Act of 1964,* 29 Vand.L.Rev. 211, 212 (1976)).

Since we conclude today that Sellers was not obligated under her duty to mitigate damages to remain in her position at Gulf, the magistrate abused his discretion by premising his denial of front pay on the basis of Sellers' failure to do something we have determined she had no legal duty to do. Furthermore, our conclusion is bolstered by the fact that the position at Gulf was not comparable to that at Delgado in terms of salary and promotional opportunities; therefore, Sellers could not have achieved her "rightful place" by remaining in that position in any event.

### D. *Attorney's Fees*

■ In regard to the consolidated appeal of the award of attorney's fees, Sellers asserts that the magistrate erred in awarding her attorney's fees at a lower hourly rate than that requested by Sellers' counsel. Specifically, the magistrate reduced Sellers' requested hourly rate for attorney's fees from $150 per hour to $125 per hour for in-court time and $100 per hour for out-of-court time. The magistrate reasoned that the hourly rate requested by Sellers was somewhat higher than rates which had been routinely awarded by the court for such services in the past. The magistrate recognized that Sellers' attorney, George Strickler, is a qualified and distinguished litigator with expertise in the field of employment discrimination. Such a factor has been approved by this Court as appropriate in a determination of an award of attorney's fees. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718–19 (5th Cir.1974). Nevertheless, a district court is also expressly permitted by *Johnson* to consider awards in similar cases as well. A district court may determine the award "in the light of awards made in similar litigation within and without the court's circuit." *Id.* at 719. "While specific findings ... involve fact determinations reversible under the clearly erroneous standard ..., the ultimate determination of the amount of the award [of attorney's fees] is a matter within the sound discretion of the district court." *Brantley v. Surles,* 804 F.2d 321, 327 (5th Cir.1986).[5] Applying the above standard, we cannot say the magistrate erred in his award of attorney's fees.

For the reasons cited, we vacate the magistrate's judgment awarding Sellers

---

**5.** Delgado also complains of the award of attorney's fees, contending that the magistrate erred in awarding Sellers attorney's fees for all of the time expended by her attorney. We are not persuaded by Delgado's contention.

back pay, denying front pay, and denying prejudgment interest. Accordingly, we remand for a redetermination of the damages issue not inconsistent with this opinion. Finally, we affirm the magistrate's award of attorney's fees.

VACATED AND REMANDED; AWARD OF ATTORNEY'S FEES AFFIRMED