**Connie REYNOLDS, Plaintiff,**

v.

**OCTEL COMMUNICATIONS CORPORATION, Defendant.**

**Civil A. No. 3:94–CV–2059–G.**

United States District Court, N.D. Texas, Dallas Division.

Dec. 8, 1995.

Yona Rozen, Gillespie Rozen & Tanner, Dallas, TX, for plaintiff.

Franklin Eastwood Wright, Winstead Sechrest & Minick, Dallas, TX and Richard Matthew Kobdish, Jr., Fulbright & Jaworski, Dallas, TX, for defendant.

### *MEMORANDUM ORDER*

FISH, District Judge.

Connie Reynolds ("Reynolds") brought this case alleging claims of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* It is before the court to decide what judgment should be entered after a jury trial on the merits.

### I. *BACKGROUND*

Reynolds, a female born on January 10, 1940, commenced employment with the defendant Octel Communications Corporation ("Octel") as a senior account executive.

While Reynolds was employed by Octel, she was one of only two female account executives. At the time of her termination, Reynolds was the only female account executive in the Dallas office and was older than any other individual in that office. Reynolds was discharged from employment at Octel on February 12, 1993. At the time of her termination, Reynolds was 53 years of age and had been continuously employed by Octel for approximately six years.

During a four day trial on the merits on November 6–9, 1995, Reynolds was the only party who called witnesses. Octel moved for a directed verdict at the close of Reynolds' case-in-chief. When this motion was denied, Octel declined to put on any additional evidence.

The jury returned a verdict after deliberating for approximately six hours. The jury found as follows:

1. Did Octel discharge Reynolds because of her age?

   Answer:     Yes.

2. Did Octel willfully discriminate against Reynolds on the basis of her age?

   Answer:     Yes.

3. Did Octel discharge Reynolds because of her sex?

   Answer:     Yes.

4. What sum of money, if paid now in cash, would fairly and reasonably compensate Reynolds for the wages and other job-related benefits she lost from February 12, 1993, when her employment with Octel was terminated, through the date of trial?

   Answer:     $149,999.00

5. From the time of her discharge by Octel until now, what sum of money could Reynolds, in the exercise of reasonable diligence, have earned from other comparable employment?

   Answer:     $162,000.00

6. What sum of money, if paid now in cash, would fairly and reasonably compensate Reynolds for any emotional pain, suffering and inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, or other non-pecuniary losses she has suffered as a result of Octel's intentional discrimination?

   Answer:     $800,000.00

7. What amount of punitive damages, if any, should Reynolds recover from Octel?

   Answer:     $2,500,000.00

Following the trial, both Reynolds and Octel submitted post trial memoranda discussing a number of issues that are relevant to the entry of judgment.

## II.  ISSUES RELATING TO JUDGMENT

### A.  Single Recovery for Single Injury

■ Although the jury rendered a verdict in favor of Reynolds on both her sex discrimination and age discrimination claims, she cannot recover the same damages twice. *Atkinson v. Anadarko Bank and Trust Company*, 808 F.2d 438, 441 (5th Cir.), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987) (citing *Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1171 (5th Cir.1984)). Although Octel may have discriminated against Reynolds on multiple grounds, she sustained but a single injury. The court has the duty to enter a judgment on the jury's verdict that will provide Reynolds with the maximum recovery allowed by law for all of the *damages she sustained* when Octel terminated her for a discriminatory reason, no matter what the nature of the discrimination. *Cf. Cyrak v. Lemon*, 919 F.2d 320, 326 (5th Cir.1990) (where a federal securities claim overlaps with a pendent state claim, the plaintiffs are entitled to the "greatest amount recoverable under any single theory pled, with actual damages plus prejudgment interest [on the federal claim] representing one single amount and actual damages plus punitive damages [on the pendent claim] representing the other single amount").

### B.  Statutory Limit on Compensatory and Punitive Damages

■ The jury awarded Reynolds $800,000 in compensatory damages and $2.5 million in punitive damages. Title VII, however, limits

her recovery of such damages to $300,000. *See* 42 U.S.C. § 1981a(b)(3).* Since the jury's award exceeded this amount, Reynolds is entitled to recover the statutory maximum of $300,000 as compensatory and punitive damages.

## C. *Back Pay*

■ The $300,000 limit on compensatory and punitive damages does not preclude Reynolds, as a successful Title VII plaintiff, from obtaining other damages. "Compensatory damages awarded under this section shall not include backpay, interest on backpay, or any other type of relief authorized under section 706(g) of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000e–5(g)]." 42 U.S.C. § 1981a(b)(2).

■ The purpose of backpay is to place the plaintiff into the same financial position she would have otherwise occupied but for the unlawful discrimination. *Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 111 (5th Cir.1988); *Equal Employment Commission v. Fotios*, 671 F.Supp. 454, 456 (W.D.Tex.1987). While backpay is not mandatory, the remedial nature of Title VII requires it in all but "special circumstances." *Carpenter v. Stephen F. Austin State University*, 706 F.2d 608, 631 (5th Cir.1983). Given the remedial purpose of Title VII, to eradicate discrimination and to make whole its victims, once a victim has demonstrated economic loss as the result of discrimination, the court's discretion to deny backpay is "narrow." *Id.* Although backpay is discretionary, any decision to deny it must be exercised in light of the objectives of Title VII. *Floca*, 845 F.2d at 111 (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)).

The jury answered Question No. 4 that $149,999 is the amount of money that would fairly and reasonably compensate Reynolds for the wages and other job related benefits she lost from the time her employment was terminated by Octel until the date of trial. Reynolds is thus entitled, in conformity with the objectives of Title VII, to recover this amount as backpay to restore her to the position she would have been in but for the discrimination. *See Sellers v. Delgado College*, 839 F.2d 1132, 1136 (5th Cir.1988).

## D. *Liquidated Damages*

■ Under the ADEA, a prevailing plaintiff is entitled to recover liquidated damages if the discrimination is found to be willful. The legislative history of the ADEA indicates that Congress intended for liquidated damages awarded under that statute to be punitive in nature. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 623, 83 L.Ed.2d 523 (1985). Were Reynolds to receive both liquidated damages under the ADEA and punitive damages under Title VII, Octel would be punished twice for the same conduct (*i.e.*, terminating Reynolds' employment), because of the jury's finding that that conduct violated both laws. Since the court has already concluded that Reynolds should receive $300,000 in compensatory and punitive damages, she is not entitled to liquidated damages as well. *Bailey v. Container Corporation of America*, 660 F.Supp. 1048, 1053 (S.D.Ohio 1986) (liquidated damages on ADEA claim and punitive damages on pendent state law claim would constitute a double recovery for the plaintiff). *Cf. Hadley v. VAM PTS*, 44 F.3d 372, 376 (5th Cir.1995) (treating liquidated damages under the ADEA and punitive damages under Title VII as equivalents for purposes of determining appropriateness of front pay).

## E. *Mitigation*

■ As a successful Title VII claimant, Reynolds has a statutory duty to minimize her damages. *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.), *cert.*

---

* Title VII prescribes the following limit on compensatory and punitive damages:

  The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—

  \* \* \* \* \* \*

  (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks or preceding calendar year, $300,000.
  42 U.S.C. § 1981a(b)(3).

*denied*, 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990). The duty is met if she used reasonable diligence to obtain "substantially equivalent" employment. *Id.*

■ Although Reynolds has the duty to mitigate, Octel has the burden of proving that she failed to discharge that duty. *Id.* In other words, Octel has the burden to prove that "substantially equivalent employment positions were available and that [Reynolds] failed to use reasonable diligence in seeking those positions." *Floca*, above, 845 F.2d at 111. The duty to mitigate requires only that Reynolds accept "substantially equivalent employment." *Id.* It is Octel's burden to prove that "employment was available in the specific line of work in which [Reynolds] engaged." *Id.* Having failed to call any witnesses at trial, Octel did not meet its burden of producing evidence that Reynolds failed to mitigate her damages.

While the jury answered Question No. 5, the question on mitigation of damages, in the amount of $162,000, there was no evidence in the record to support this finding. Because no reasonable factfinder could have found this (or any other) amount on this state of the evidence, the jury's answer to Question No. 5 must be disregarded.

### F. *Front Pay*

**[13]** After the jury's verdict was returned, the court heard evidence regarding the feasibility of reinstatement and concluded that reinstatement was not feasible because of Reynolds' testimony regarding her perception of hostility towards her on the part of her employer. Additionally, reinstatement was determined not to be feasible because Octel contended, right up until submission of the case to the jury, that Reynolds was discharged from employment not for discriminatory reasons but because she was not qualified for the position she held at Octel.

■ When reinstatement is not feasible, the equitable remedy of front pay is available at the court's discretion. *Walther v. Lone Star Gas Company*, 952 F.2d 119, 127 (5th Cir.1992); *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir.1990). Because front pay is

an equitable remedy, the court, rather than the jury, determines the amount of the award. *Walther*, 952 F.2d at 127; *Reneau*, 945 F.2d at 870; *Deloach*, 897 F.2d at 823–24.

■ Front pay is determined through "intelligent guesswork" whereby an estimation is made of the value of the prospective lost earnings that are likely to accrue between the date of judgment and the time when the victim of discrimination can assume her new position. *Sellers v. Delgado College*, 781 F.2d 503, 505 (5th Cir.1986). Because of the speculative nature of front pay, wide latitude is afforded to the district court in making that determination. *Id.*

In both the context of age discrimination and sex discrimination, the Fifth Circuit has found that a substantial award of liquidated damages or punitive damages may signal that an additional award of front pay may be excessive and inappropriate. *Hadley*, above, 44 F.3d at 376 (Title VII punitive damages); *Walther*, above, 952 F.2d at 127 (age discrimination liquidated damages).

In the case before the court, the jury awarded Reynolds more than the statutory maximum amount of compensatory and punitive damages permitted under Title VII. *See* 42 § 1981a(b)(3)(D). In light of the large award of compensatory and punitive damages, an additional award of front pay to Reynolds is not appropriate.

### G. *Prejudgment Interest*

■ The decision to award prejudgment interest on awards of backpay in Title VII cases lies within the discretion of the trial court. *Hadley*, 44 F.3d at 376. The award of prejudgment interest, an item that should be included in backpay, is merited when prejudgment interest is mandated in order to make a victim of discrimination whole. *Sellers*, 839 F.2d at 1140. Because Reynolds was terminated from employment by Octel for discriminatory reasons, an award of prejudgment interest on backpay is appropriate, given the policy and objectives of Title VII.

### H. *Attorney's Fees*

A prevailing party in a Title VII case is entitled to an award of attorney's fees. *Hadley*, 44 F.3d at 375. To recover such fees, Reynolds may submit a separate motion as provided for in F.R.Civ.P. 54(d)(2).

**SO ORDERED.**