Preyer v. Dartmouth                    CV-96-491-JD  05/06/98
                 UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


LaTanya Preyer

        v.                              Civil No. 96-491-JD

Dartmouth College, et al.


                              O R D E R


     The plaintiff, LaTanya Preyer, brought this action against

the defendants, Dartmouth College, John Koiter, and Beth Jones,

alleging sexual and racial harassment and discrimination, and

seeking monetary relief under state and federal laws.  Before the

court is the defendants' motion for partial summary judgment on

Count I of the complaint (document no. 8).


                            Background[1]

     From September 17, 1993, to June 19, 1994, the plaintiff was

employed by Dartmouth College Dining Services ("DCDS") as a

temporary counter worker earning $8.89 per hour.  During this

time she completed three consecutive three-month assignments

under the supervision of defendants Koiter and Jones.  During the

_____

        [1]The court assumes a familiarity with the factual and
procedural background of the case, which is described more fully
in its order of June 25, 1997, and recites here only those facts
relevant to the resolution of the instant motion.  Such facts are
either alleged by the plaintiff, or are undisputed.

summer of 1994, after her temporary employment with DCDS had ended, the plaintiff secured a temporary position at the Holiday Inn in White River Junction, Vermont, as a chambermaid earning $5.00 per hour.

In early August, prior to the start of the fall semester, the plaintiff applied for permanent positions with DCDS. The positions were day-shift counter worker positions, entitled to a benefit package and union membership. The starting salary was $8.89 per hour. On August 18, 1994, defendant Jones informed the plaintiff that she would not be offered a position. Jones cited her absenteeism during the previous academic year as the reason for this decision. The plaintiff was absent from work on January 12, 13, 14, 31, and June 14, 1994. She had a doctor's note for the first three January absences.

The plaintiff discussed DCDS's failure to offer her a position with the Dartmouth Equal Opportunity and Affirmative Action office ("EOAA") and an investigation ensued. On November 15, 1994, while the EOAA was still investigating the matter, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the New Hampshire Human Rights Commission.

After investigating the matter, the EOAA reached the conclusion that the decision not to offer employment was based on

"sound business reasons."  See Defs.' Mot. for Partial Summ. J.,
Attach. C.  The EOAA concluded, however, that in order to rectify
defendant Koiter's insensitive remarks,[2] Dartmouth College would
offer her employment.  See id.  Thereafter, the EOAA contacted
the plaintiff to discuss possible employment opportunities, but
the plaintiff told the EOAA officer that she was being
represented by counsel and directed the officer to her attorney.

Dartmouth College made several offers of employment to the
plaintiff.  See Mem. of Law in Supp. of Def.'s Mot. for Summ. J.
at 9.  One of the offers was for a non-union position.  Another,
a union position, required her to work the evening shift.  The
last offer required her to settle her legal claims against the
defendants.  The plaintiff declined all of these offers, claiming
that they were either not similar to the day-shift union position
with benefits that she had been denied or that they were
conditional employment offers.

From August 1994 through February 1995, the plaintiff was

---

[2]Koiter allegedly asked the plaintiff, during her temporary
employment, why black women have large breasts, and told her
"Once you've had black, you'll never go back."  The plaintiff
also alleges that during a commencement function, Koiter assigned
the plaintiff and two other black women at tables that were
directly in the sun.  When the plaintiff asked Koiter why only
blacks received this assignment, Koiter responded "We all know
blacks don't burn."  Koiter has acknowledged that he made
statements to the plaintiff that could have offensive
connotations.

3

employed by Dover Systems as a telemarketer, working 15 to 20 hours per week, and earning $8.00 per hour. Her employment with Dover Systems ended when the company closed. Concurrent with her employment at Dover Systems, from November 14, 1994, through February 13, 1995, the plaintiff was employed by Dartmouth Hitchcock Medical Center ("Hitchcock") as a dietary aide. In this capacity, the plaintiff worked a total of 30 to 40 hours per week, earning $7.33 per hour. Her employment with Hitchcock ended when she was terminated due to her absences. The plaintiff contends that her absences at the hospital were largely due to her daughter's health.[3] The plaintiff's daughter suffers from partial seizures, and is on daily medication. Because of this condition, the plaintiff has encountered difficulties finding qualified and affordable day care which she asserts limits her available employment options.

## Discussion

The defendants argue that because the plaintiff has failed to mitigate damages, the amount of back or front pay for which she is eligible should be limited. Specifically, the defendants argue that the plaintiff's failure to maintain her employment

---

[3]The plaintiff was also involved in a vehicular accident while employed at Hitchcock that caused her to miss work.

with Hitchcock, her refusal to accept an unconditional employment offer from Dartmouth College, and her reluctance to seek further employment after dismissal from Dover Systems, render her ineligible for subsequent back or front pay. The defendants seek partial summary judgment to limit their liability for front and back pay as of the date of the plaintiff's failure to mitigate damages.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is appropriate only if "the pleadings, depositions, answer to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the entire record in the light most favorable to the plaintiff "'including all reasonable inferences in that party's favor.'" Mesnik v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

In an action for damages under Title VII, the plaintiff must mitigate her damages. See, e.g., Booker v. Taylor Milk Co., 64

5

F.3d 860, 864 (3d Cir. 1995); <u>Mertig v. Milliken & Michaels,</u> <u>Inc.</u>, 923 F. Supp 636, 648 (D. Del. 1996). The plaintiff satisfies this requirement by exercising reasonable diligence in seeking and maintaining substantially equivalent employment. <u>See</u> <u>Ford Motor Co. v. EEOC</u>, 458 U.S. 219, 231-32 (1982). Substantially equivalent employment is a position "which affords virtually identical promotional opportunities, compensation, job responsibilities, and status as the position from which the Title VII claimant has been discriminatorily terminated." <u>Booker</u>, 64 F.3d at 866 (internal quotation omitted). "Whether or not a claimant has met his duty to mitigate damages is a determination of fact . . . ." <u>Id.</u>; <u>see also</u> <u>Sellers v. Delgado Community</u> <u>College</u>, 839 F.2d 1132, 1138 (5th Cir. 1989) ("The determination of whether or not a Title VII claimant uses reasonable diligence in obtaining substantially comparable employment is a deter-mination of fact . . . ."); <u>Finch v. Hercules Inc.</u>, 941 F. Supp. 1395, 1421 (D. Del. 1996) (holding that determination of whether plaintiff had met burden to mitigate damages by actively seeking employment was jury question). In this case, whether the plaintiff's employment with Hitchcock was substantially similar to the position which she was denied is a question of fact. Because reasonable fact finders could disagree about whether the two positions were substantially similar, summary judgment is

6

inappropriate.

Morever, the defendants' assertion that Dartmouth's offers of employment to the plaintiff were unconditional is without merit. Of the three employment offers made to the plaintiff, it is undisputed that one required her to work the evening shift, another was not a union position, and the third required her to forgo her legal claims against the defendants. Given the fact that the position from which the plaintiff was denied was a day-shift union position, the first two offers raise a genuine issue of substantial similarity for the fact finder. The third offer, requiring the plaintiff to settle her legal claims against the defendants, is clearly not an unconditional offer. See Ford Motor Co., 458 U.S. at 232 n.18.

Finally, the defendants have failed to satisfy the elements required to prove that the plaintiff's reluctance to seek similar employment should result in limiting their liability. To meet this burden, the defendants must demonstrate that "1) sub-stantially equivalent work was available, and 2) the Title VII claimant did not exercise reasonable diligence to obtain the employment." Booker, 64 F.3d at 864. Because the defendants have failed to address the availability of substantially equivalent work, they have not demonstrated their entitlement to partial summary judgment.

7

## Conclusion

For the foregoing reasons, the defendants' motion for partial summary judgment (document no. 8) is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

May 6, 1998

cc:  Edward M. Van Dorn Jr., Esquire
     Michael R. Callahan, Esquire