754 F.Supp. 713 (1991)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,
v.
INDEPENDENT STAVE COMPANY, INC., Defendant.
No. S88-0156-C.
United States District Court, E.D. Missouri, Southeastern Division.
January 3, 1991.
*714 *715 Charles Shanor, E.E.O.C., Washington, D.C., Barbara A. Seely, Loraine Bryson, E.E.O.C., St. Louis, Mo., for plaintiff.
Thomas M. Hanna, McMahon Berger Hanna Linihan Cody & McCarthy, St. Louis, Mo., Donald W. Jones, Hulston Jones & Sullivan, Springfield, Mo., for defendant.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action against defendant Independent Stave Company, Inc. alleging that defendant's failure to recall Verna Turner from a layoff violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, et seq. The action arises out of charges filed with the EEOC by Mrs. Turner alleging discrimination in employment on the basis of her sex and age.
This case was tried before the Court on February 1, 1990 and February 2, 1990. The Court, having considered the pleadings, deposition testimony of witnesses, and documents admitted into evidence hereby makes the following findings of fact and conclusions of law as required by Fed.R. Civ.P. 52.

I. Findings of Fact

Mrs. Turner is a female who was born May 16, 1931. Defendant is a company that manufactures wooden staves for barrels. Defendant purchases white oak logs, debarks them, and then saws them into barrel staves and barrel headings which are shipped to one of defendant's barrel manufacturing plants. Mrs. Turner was employed at defendant's stave mill in Bunker, Missouri ("Bunker Mill").[1]
Ed McNail was the mill manager at the Bunker Mill from 1974 until 1988. The mill managers hire mill employees on an hourly basis. Mr. McNail maintained cards on all employees of the Bunker Mill on which he recorded personnel information such as employee hire and termination dates and observations concerning the employees' performance. On July 2, 1976 Mr. McNail hired Mrs. Turner to work in the Bunker Mill.
Mrs. Turner was initially assigned the jobs of strip catcher, stacker, and second edger. Mr. McNail removed her from these positions because he felt that she was unable to keep up with production demands. Mr. McNail noted Mrs. Turner's unsatisfactory performance in these positions on Mrs. Turner's personnel card. On August 5, 1976 Mr. McNail assigned Mrs. Turner to the position of grader. Although Mrs. Turner was initially unable to keep up with production as a grader, Mr. McNail judged her performance to be satisfactory after several weeks. Mrs. Turner continued as a grader for approximately three years. On June 22, 1979 Mrs. Turner voluntarily terminated her position with defendant.[2] After terminating her position with *716 defendant, Mrs. Turner accepted employment with Fox and Lee Lumber Company. Mrs. Turner terminated her position with Fox and Lee Lumber Company after five months because her position there was even more physically demanding than her position as a grader with defendant.
On March 6, 1980 Mr. McNail rehired Mrs. Turner. Mrs. Turner was initially assigned to work as a second edger, stacker, and strip catcher on the second shift. On April 17, 1981 Mrs. Turner transferred to the new mill in the position of grader. Mrs. Turner continued as a grader for approximately four years. During her employment with defendant Mrs. Turner helped train and supervise employees in the positions of grader, stacker, strip catcher, and second edger.
In 1985 defendant suffered a loss of business due to a diminished demand for bourbon barrels. Defendant explored the possibility of combining positions as a means of cutting operating costs. On June 4, 1985 defendant combined the jobs of grader and stacker and assigned them to Mrs. Turner. The grader receives staves delivered by a chute, sorts them based on size and appearance, and places the sorted staves on a table approximately three feet away. The stacker removes the staves from the table and places them on a pallet in a particular pattern. Mrs. Turner performed the combined position of grader/stacker on June 4, 1985 and June 5, 1985. After the positions were combined, Mrs. Turner was unable to keep up with production, and it was necessary for other employees to assist her.[3]
On June 6, 1985 the Bunker Mill shut down. Nine of the thirteen employees of the Bunker Mill, including Mrs. Turner, were laid off. Mrs. Turner was the only woman working at the Bunker Mill at the time of the layoff. On June 6, 1985 Mrs. Turner, who was fifty-four years old, was the oldest employee at the Bunker Mill except for Mr. McNail. On January 6, 1986 defendant offered to recall all persons who had been laid off except Mrs. Turner. On January 13, 1986 Mr. McNail notified Mrs. Turner that she was permanently laid off because the position of grader had been eliminated.
The Bunker Mill reopened on January 9, 1986 with the positions of grader and stacker combined. Several men, who were younger than Mrs. Turner, attempted to perform the combined position of grader/stacker, but none were able to perform satisfactorily. The grader/stackers were unable to keep up with production and the Bunker Mill received complaints that poor quality staves were not being culled. Quinton Barton testified on behalf of plaintiff. Mr. Barton was hired in January, 1986 and was assigned to the position of grader/stacker for approximately one month. During his tenure as grader/stacker Mr. Barton was unable to keep up with production and was assisted by other employees approximately twice per day. Mr. Barton remained at the Bunker Mill for approximately four months and never observed any employee being able to perform the combined position satisfactorily. No employee, however, was disciplined for being unable to perform the combined position of grader/stacker. After a few months, the positions of grader and stacker were separated. After the separation Mrs. Turner was not recalled to fill the recreated position of grader.
Mrs. Turner testified that she had no trouble performing her position as a grader until the combination of the grader and stacker positions on June 4, 1985. Throughout her tenure Mr. McNail never reprimanded her or in any other way disciplined Mrs. Turner for being too slow as a grader. Several persons who worked at the Bunker Mill with Mrs. Turner testified on her behalf. Jim Radford was employed by defendant in the Bunker Mill from July, 1982 to January, 1985. Mr. Radford worked at all positions in the Bunker Mill and was effectively second in command *717 after Mr. McNail. Mr. Radford testified that he observed Mrs. Turner grade staves every day and that she had no trouble keeping up with production.[4] Corinne Williamson worked at the Bunker Mill from 1974 to January, 1985. Although Ms. Williamson occasionally helped Mrs. Turner pick up staves, she testified that Mrs. Turner was always able to keep up with production in the position of grader. Lanoy Wilson worked at the Bunker Mill with plaintiff. Mr. Wilson observed that Mrs. Turner did not fall behind more than anyone else, and only needed occasional help to keep up with production.
Mr. McNail, who testified on behalf of defendant, asserted that Mrs. Turner was of little use at the Bunker Mill. First, Mr. McNail claimed that Mrs. Turner was too slow as a grader, and could not keep up with production when the Bunker Mill was operating near full capacity. Although Mr. McNail hired Mrs. Turner twice, he hired her in periods of shorthandedness. Also, Mr. McNail and Mrs. Turner have been acquaintances for over forty years. Mr. McNail knew that Mrs. Turner provided the sole financial support for her family and therefore desperately needed the job. Although Mrs. Turner was unsatisfactory, Mr. McNail was reluctant to terminate or even reprimand her due to their long acquaintance and his knowledge of her financial position. Second, Mr. McNail testified that Mrs. Turner could only grade, and that she could not keep up with production in the other positions, such as second edger and scrap catcher.

II. Conclusions of Law

Plaintiff asserts that it has proved unlawful discrimination based on direct and indirect evidence that Mrs. Turner was permanently laid off due to her sex and age.

A. Direct Evidence
Plaintiff's case on direct evidence of sex and race discrimination is comprised of two statements. The first statement was allegedly made by Tommy McNail to Mrs. Turner. Tommy McNail is the son of Ed McNail. Mrs. Turner testified that Tommy McNail told her that Ed McNail said Mrs. Turner was not recalled from the layoff because she was too old and that the men did not want women working in the Bunker Mill. The Court ruled that this statement was inadmissible as double hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The statement allegedly made by Ed McNail to Tommy McNail and then Tommy McNail to Mrs. Turner is an assertive out of court statement made by an out of court declarant. The statement is being offered to prove the truth of the matter asserted, that is, that Mrs. Turner was not recalled due to her sex and age. Therefore, the statement satisfies the definition of hearsay.
Plaintiff, however, asserted that Tommy McNail's statement is admissible under Fed.R.Evid. 803(24) (1987), which provides, in relevant part:
A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through other reasonable efforts; and (C) the general purpose of these rules and the interests of justice will be served by admission of the statement into evidence.
The first factor  materiality  weighs in plaintiff's favor. The statement, which relates the reason Mr. McNail did not recall Mrs. Turner, is offered as evidence of a material fact. The second factor  probative value  also weighs in plaintiff's favor. The reason why Mrs. Turner was not recalled is largely subjective. The most probative evidence of why Mr. McNail permanently laid off Mrs. Turner is a candid *718 statement by Mr. McNail setting forth the reasons.
The third and most important factor  inherent trustworthiness  weighs in defendant's favor. Plaintiff argues that the statement possesses an indicia of reliability because Tommy McNail was Ed McNail's son and Tommy McNail would not say anything against his father's interest if it were not true. The mere fact that Ed McNail and Tommy McNail are related does not provide the indicia of reliability necessary to admit the statement under the catch-all exception to the hearsay rule. Family members, however, often say and do things that are not in the best interest of those related to them. Therefore, Tommy McNail's statement does not qualify as an exception to hearsay under Fed.R.Evid. 803(24).
The second statement was offered by Marvin Eels. Mr. Eels worked with Mrs. Turner at the Bunker Mill for four years. Mr. Eels testified that he visited Mr. McNail after Mr. Eels terminated his employment at the Bunker Mill. During this visit Mr. McNail told Mr. Eels that he was only going to hire younger people because older people cannot do the job like younger people. The Court considers Mr. Eels' testimony incredible. Mr. Eels could not remember when the conversation took place, not even to place it in a decade, and could not remember a single other detail about the conversation but this one statement by Mr. McNail.
For the following reasons, the Court concludes that plaintiff failed to make a prima facie case on direct evidence of age and sex discrimination.

B. Indirect Evidence
The plaintiff must first prove a prima facie case of age and sex discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Plaintiff may establish a prima facie case by showing (1) that Mrs. Turner was within the protected classes, (2) that she met applicable job qualifications, (3) that despite these qualifications, she was permanently laid off, and (4) that, after the permanent layoff the position remained open and the employer continued to seek applications from persons with similar qualifications. Id.[5] If the plaintiff succeeds, then defendant must show a legitimate, non-discriminatory reason for the adverse employment action. Id. Finally, if the defendant succeeds, plaintiff must prove by a preponderance of the evidence that the reasons given by the defendant for the challenged employment action were pretextual. Id. at 804, 93 S.Ct. at 1825. The burden remains with the plaintiff to prove that her age and sex were the determining reasons for her permanent layoff.
Plaintiff proved a prima facie case of sex and age discrimination. First, Mrs. Turner is a member of the protected classes. Mrs. Turner is a woman and was over the age of forty at the time of her permanent layoff. Second, Mrs. Turner met the applicable job qualifications of a grader. At the time of her permanent layoff Mrs. Turner had performed the position of grader for approximately eight years. Except for a short period in 1976 when she was first trained, she was never reprimanded or disciplined for not performing satisfactorily. Mrs. Turner testified that she was able to keep up with production and performed satisfactorily until the positions of grader and stacker were combined. Mrs. Turner's testimony was corroborated by co-workers who observed Mrs. Turner's job performance and considered it satisfactory.
Third, Mrs. Turner was permanently laid off on January 13, 1986. Fourth, the position of grader was open sometime in March, 1986. When the Bunker Mill reopened in January, 1986, the positions of grader and stacker were combined. Because Mrs. Turner demonstrated an inability to keep up in the combined position, plaintiff has failed to make a prima facie case of discrimination for failure to recall *719 Mrs. Turner on January 9, 1990. The positions of grader and stacker were separated several months later after no person assigned to the combined position could perform it satisfactorily. When the positions were separated, however, Mrs. Turner was not recalled. Instead, the position of grader was filled by a younger male. Therefore, plaintiff has proved a prima facie case of sex and age discrimination from the date the grader position was recreated and Mrs. Turner was not recalled to fill it.
Because plaintiff succeeded in proving a prima facie case, defendant must set forth a legitimate, non-discriminatory reason for the permanent layoff. Defendant has set forth essentially three reasons for its refusal to recall Mrs. Turner. First, Mr. McNail testified that due to budget considerations he was instructed to recall only those employees who could work in more than one position.[6] Mrs. Turner, who was qualified to only work as a grader, was the only employee who possessed such a limitation.
Second, Mr. McNail testified that Mrs. Turner's performance was wholly unsatisfactory. Mrs. Turner was simply unable to keep up with production; other employees of the Bunker Mill were frequently required to assist Mrs. Turner in her duties. Although Mrs. Turner may have performed marginally at the old mill, the pace of production at the new mill was faster and Mrs. Turner did not have the stamina to keep up.
Third, Mr. McNail was concerned about Mrs. Turner's ill health. Defendant inquired whether plaintiff's witnesses observed Mrs. Turner at work when she was ill, and most said that Mrs. Turner reported for work even when she was not feeling well. Although Mrs. Turner would keep on working as a grader, Mr. McNail did not want Mrs. Turner to compromise her health by filling a position beyond her physical capabilities.
Defendant has succeeded in setting forth a legitimate, non-discriminatory reason for the layoff. Mrs. Turner had a position which required physical stamina and was not recalled because she could not keep up with the pace of production. Because defendant has succeeded in setting forth a legitimate, non-discriminatory reason for the permanent layoff, plaintiff must prove that the reasons given by defendant were pretextual.
Plaintiff succeeded in proving by a preponderance of the evidence that the legitimate reasons proffered by defendant were pretextual. First, defendant claimed that Mrs. Turner's performance at the Bunker Mill was wholly unsatisfactory. The only evidence that defendant put before the Court is the uncorroborated testimony of Mr. McNail. Mr. McNail asserted that the sole position Mrs. Turner could perform was that of a grader, and that Mrs. Turner's performance as a grader was unsatisfactory because she was unable to keep up with production. When Mrs. Turner was rehired in 1980, Mr. McNail assigned her to the positions of second edger, strip catcher, and stacker. Neither Mr. McNail's personnel cards nor his testimony revealed that Mrs. Turner performed unsatisfactorily in those positions. Furthermore, Mr. McNail trusted Mrs. Turner to train and supervise other employees in those positions.
Several witnesses testified that they worked with Mrs. Turner and that she performed the job satisfactorily. The Court considered these witnesses, particularly Mr. Radford, to be credible.[7] Defendant, however, did not effectively impeach the credibility of plaintiff's witnesses or call any of its own witnesses who had a contradictory perception of Mrs. Turner's performance.[8] *720 Instead, defendant relied on the uncorroborated testimony of Mr. McNail.
The Court recognizes that sympathy for Mrs. Turner among the employees at the Bunker Mill may have colored their perceptions and testimony about the performance of Mrs. Turner. The Court, however, will not engage in this type speculation when the evidence presented by plaintiff clearly established that Mrs. Turner's performance was satisfactory.
Second, Mr. McNail's concerns about Mrs. Turner's ill health were unsupported by the evidence. Defendant asked many witnesses whether Mrs. Turner came to work when she was feeling ill. Most, if not all, testified that Mrs. Turner reported for work when she was not feeling well. Defendant, however, failed to introduce any evidence that Mrs. Turner was frequently ill and that her ill health compromised her productivity.
Defendant also asked several witnesses whether Mrs. Turner was the victim of spouse abuse and showed signs of being battered at work. Defendant questioned most of plaintiff's witnesses concerning whether they saw Mrs. Turner come into work with bruises and black eyes, and each denied that they had. Mrs. Turner admitted that her husband threw an electric razor at her once and on the following Monday she went to work with two black eyes. Defendant, however, failed to prove that Mrs. Turner was the victim of repeated spouse abuse or that any beatings compromised her efficiency or productivity on the job.
Finally, defendant urges the Court to observe Mrs. Turner's health at the time of the trial and conclude that she was too debilitated to grade staves at the Bunker Mill. The Court agrees that at the time of trial Mrs. Turner was unable to perform any physically demanding task. The Court does not, however, consider Mrs. Turner's current physical state probative of whether Mrs. Turner was able to grade staves at the time of her permanent layoff, which was three years prior. There was simply no evidence, except for the uncorroborated testimony of Mr. McNail, that Mrs. Turner was too physically debilitated to perform satisfactorily. Instead, the weight of the evidence supports the conclusion that at the time of Mrs. Turner's permanent layoff she was willing and physically able to grade staves at the Bunker Mill.
The ultimate burden remains on the plaintiff to prove that sex and age were the determining factors in defendant's decision. After a thorough review of the evidence the Court concludes that plaintiff has met this burden. At the time of the layoff Mrs. Turner was the female employee of defendant and the oldest employee except for Mr. McNail. Mrs. Turner was the only employee who was not recalled. Mrs. Turner had performed in the position of grader for approximately eight years without being reprimanded or disciplined for unsatisfactory performance. Several employees who were familiar with Mrs. Turner's performance testified that Mrs. Turner was a competent grader who performed satisfactorily throughout her tenure. Defendant merely presented the uncorroborated testimony of Mr. McNail, and raised the issues of ill health and spouse abuse that were not substantiated by evidence. The ultimate question is whether Mrs. Turner was treated less favorably than if she would have been younger or a male. The Court concludes that she was.
For the foregoing reasons, the Court enters judgment in favor of plaintiff and against defendant on the merits of Count I and Count II of plaintiff's complaint.

Damages

A. Reinstatement
Although reinstatement is available under both Title VII and the ADEA, plaintiff does not seek the reinstatement of Mrs. Turner. Mrs. Turner is currently disabled and cannot return to work. Plaintiff, however, *721 seeks back pay and liquidated damages.[9]

B. Back Pay
Title VII and the ADEA permit an award of back pay to victims of unlawful discrimination. Although back pay is not an automatic remedy, in the absence of exceptional circumstances back pay should be awarded when a Title VII or ADEA violation is found. Sellers v. Delgado Community College, 839 F.2d 1132, 1136 (5th Cir.1988). One circumstance which would justify the denial of back pay is if the discharged employee failed to mitigate damages. It is the defendant's burden to prove, as an affirmative defense, that the employee failed to mitigate damages. Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1234 (7th Cir.1986) (citing Hanna v. American Motors Corp., 724 F.2d 1300, 1307 (7th Cir.1984)). To prevail, the defendant must prove that the employee was not reasonably diligent in seeking other employment, and that with the exercise of reasonable diligence there was a reasonable chance that the employee might have found comparable employment. Id.
After Mrs. Turner was notified of her layoff she began to seek employment elsewhere. Mrs. Turner testified that she applied numerous times for positions at Ward's Supermarket, Town & Country Supermarket, Louise TruBuy, Farmers State Bank. Each time plaintiff was informed that no positions were available. Defendant presented no evidence that Mrs. Turner remained idle after her layoff and did not seek comparable employment. Therefore, the Court concludes that Mrs. Turner satisfied her obligation to mitigate damages.
A back pay award should make whole the injured party by placing that individual in the position she would have been but for the discrimination. Sellers, supra, 839 F.2d at 1136 (citing EEOC v. Guardian Pools, Inc., 828 F.2d 1507, 1510 (11th Cir.1987)). Plaintiff seeks back pay from the date of the violation until the date Mrs. Turner was disabled. The Court has determined the date of the violation to be the date on which the grader/stacker positions were separated and Mrs. Turner was not recalled to fill the position as grader. Although the Court is not aware of the precise date, the Court speculates that the separation occurred around March, 1986. Plaintiff seeks back pay to the date on which Mrs. Turner could not return to work as a grader because of her disability.
Plaintiff admits that Mrs. Turner was disabled as of November, 1988. Defendant, however, argues that Mrs. Turner was disabled earlier. The Court agrees with defendant. The Social Security Administration considered Mrs. Turner disabled as of June 1, 1988. Although the conclusion of the Social Security Administration is not binding upon this Court, the Court considers it highly probative of the latest date on which Mrs. Turner was able to return to work at the Bunker Mill. Also, Mrs. Turner secured employment as a nurse's aide at a nursing home from January, 1988 to June, 1988.[10] Although Mrs. Turner testified that she terminated her employment in June, 1988 because her employer cut her hours, she later testified that she quit because the work was too physically demanding.
The Court awards back pay for the period beginning when the grader/stacker position was separated and ending when Mrs. Turner was physically unable to return to her position as a grader. The Court does not possess sufficient evidence to designate either date. If the parties cannot agree upon the dates, the Court will promptly resolve the issue after reviewing additional material submitted by the parties.

C. Liquidated Damages
For non-willful violations of the ADEA, only reinstatement, back pay and lost benefits are allowed. Realmuto v. Yellow Freight Systems, Inc., 712 F.Supp. *722 287 (E.D.N.Y.1989); 29 U.S.C. § 626(b). For willful violations, ADEA allows liquidated damages, which are punitive in nature. Realmuto, supra, 712 F.Supp. at 287 (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). By the express terms of the statute, liquidated damages are an additional amount equal to the back pay and lost benefits award. Cassino v. Reichhold Chemicals, Inc., 817 F.2d 1338, 1348 (9th Cir.1987), cert. denied, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).
In Trans World Airlines, Inc. v. Thurston, the Court adopted a standard for determining whether a violation of the ADEA was willful. A violation is willful if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." Id. 469 U.S. at 128, 105 S.Ct. at 625. "Thus, in order that the liquidated damages be based on evidence that does not simply duplicate that needed for compensatory damages, there must be some additional evidence of the employer's reckless disregard." Id. In order to prove willfulness the plaintiff must prove more than the employer knew the ADEA exists. Tolan v. Levi Strauss & Co., 867 F.2d 467, 471 (8th Cir.1989). In a disparate treatment case, the proof of willfulness requires more than just an inference from an arguably pretextual justification. Neufeld v. Searle Laboratories, 884 F.2d 335, 340 (8th Cir.1989).
Plaintiff has failed to set forth sufficient evidence of willfulness. The Court considers this a very close case in which defendant's justification for its actions was "arguably pretextual." With more careful documentation and corroboration it is possible that plaintiff may not have mustered the evidence to prove pretext. The Court has reviewed the record and finds it void of the "additional evidence" necessary to prove willfulness. Instead, plaintiff has merely proven a violation of the ADEA and invites the Court to award liquidated damages. The Court declines the invitation.
NOTES
[1] The Bunker Mill is the site of two mills owned by defendant: the old mill and the new mill. The new mill was built in 1981. The old mill was closed shortly after the new mill was completed.
[2] The parties disagreed as to why Mrs. Turner terminated her employment with defendant. Mrs. Turner asserted that she quit because Mr. McNail was verbally abusive with his employees and made the Bunker Mill an unpleasant place to work. Defendant, however, asserts that Mrs. Turner quit because she found the work too physically demanding.
[3] Mr. McNail testified that he knew Mrs. Turner would not be able to perform satisfactorily in the combined position of grader/stacker.
[4] Mr. Radford retired before Mrs. Turner was assigned to the combined position of grader/stacker.
[5] Although the guidelines set forth in McDonnell Douglas Corp. v. Green are specifically addressed to actions under Title VII, the Eighth Circuit has approved the use of the guidelines in actions under the ADEA. See, Morgan v. Arkansas Gazette, 897 F.2d 945, 948 (8th Cir.1990).
[6] Clinton Jemes, defendant's vice president of mills, testified that he instructed Mr. McNail to only rehire those who could perform more than one position.
[7] Although some witnesses were Mrs. Turner's peers rather than supervisors, the nature of the position under consideration would render peers as well as supervisors capable of observing and commenting on Mrs. Turner's performance. In fact, a peer who was constantly in the work area with Mrs. Turner might be more capable of rating her performance than a supervisor who only occasionally observed her throughout the workday.
[8] The witnesses called by defendant, except Mr. McNail, admitted they did not observe Mrs. Turner at the Bunker Mill and were able to comment on her performance.
[9] Liquidated damages are not available under Title VII but are available for a willful violation of the ADEA.
[10] Defendant may subtract Mrs. Turner's wages as a nurse's aide and as a mill employee at another mill in 1987 from its back pay award.