**Robert GOWER, Sr., Plaintiff,**

v.

**WRENN HANDLING, INC., Defendant.**

No. 2:94CV00046.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Feb. 17, 1995.

---

Judith G. Behar, Greensboro, R. Horace Swiggett, Jr., Burlington, NC, for plaintiff.

Randel E. Phillips, Sarah J. Kromer, Charlotte, NC, for defendant.

### MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court on Wrenn Handling's (hereinafter "Wrenn") Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This is a disability discrimination action arising out of violations of the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. § 12101, *et seq.*

### FACTS

Robert Gower (hereinafter "Gower") was employed as a road service technician by Wrenn from 1983 to 1985 and from 1987 to January, 1993. Gower's responsibilities entailed performing on-site repairs on material handling equipment for Wrenn's customers.

On November 25, 1991, while performing his duties, Gower injured his shoulder. Gower was diagnosed with having a torn rotator cuff. Because of his injury, Gower was unable to perform the duties of his job. As a result, Gower took a leave of absence. Over the next twelve months, Gower remained on unpaid disability leave. According to Wrenn's leave policy at the time, an employee could take a disability leave for a ninety day period, which could be extended not to exceed twelve months. (Holmes Aff. ¶ 10 & Ex. A.) Employees still on leave after a twelve month period were to be terminated. (Holmes Dep. at 39.) Any extension beyond the twelve month period did not guarantee job protection. (Holmes Aff. & Ex. A.)

In January, 1992, James Holmes (hereinafter "Holmes") became personnel director. In the fall of 1992, Holmes prepared several memoranda on the increasing costs of Wrenn's employees' health care. As a result, Wrenn decided to change the company's health care plan. On December 17, 1992, Holmes met with several employees, in Greensboro, North Carolina, to discuss the increased annual deductible fees for employees.

Since Gower was concerned about his continued employment, Holmes, and Howard Robertson (hereinafter "Robertson"), the Greensboro branch manager, agreed to meet with him. They decided to meet in Greensboro after the general December 17th meeting to discuss Wrenn's leave policy. During this meeting, Gower brought up the subject of his son's unpaid medical bills. Earlier at a Christmas party, in December, 1992, Gower had mentioned to Robertson the same problems concerning his son's medical bills. Holmes informed Gower that as of December 17, 1992, Gower's employment had not been officially terminated.

Both Holmes and Robertson agreed to wait and not to terminate Gower's employment, due to the expiration of his extended leave, until after they received Gower's final prognosis. Gower was scheduled to see his doctor on January 4, 1993. On December 22, 1992, five days after the December 17th meeting, Robertson, at the direction of Holmes, initiated the termination paperwork for Gower.

On January 4, 1993, Gower's prognosis remained the same and he was not cleared to return to work. Gower communicated this fact to Wrenn. On the same date, January 4, 1993, Holmes signed the employee status and payroll change form. The form was backdated effective on December 1, 1992, which was the closest payroll date after Gower's

leave expired. The separation report, accompanying the status change form, stated that Gower was a good technician and would be rehired if his condition ever improved.

On January 6, 1993, Gower again met with Holmes and Robertson. At this meeting, Gower inquired whether Wrenn had any other open positions. Gower expressed interest in two positions—a potential parts-clerk position in Raleigh, North Carolina, and a customer service representative (hereinafter "CSR") position. The parts-clerk position never became available. On the same date, January 6, 1993, after meeting with Gower, Wrenn sent out a COBRA eligibility form confirming Gower's termination on December 1, 1992. Gower received the COBRA form on January 7, 1993.

Shortly thereafter, Wrenn hired Wayne Moore (hereinafter "Moore") for the vacant CSR position even though Gower had expressed an interest in the CSR position. The position had been vacant for a period of time prior to January 6, 1993, and it was not to be budgeted as an active position until April, 1993. Wrenn contends that Moore was more qualified for the position than Gower, and that it was justified in hiring Moore.

On January, 31, 1994, Gower filed this cause of action claiming 1) violation of the ADA, 42 U.S.C. § 12101, *et seq.,* 2) that he was terminated because of his son's medical bills, 3) that Wrenn terminated his employment with "reckless indifference" to his ADA rights, and 4) that his termination was contrary to the public policy set forth in the North Carolina Handicapped Persons Protection Act, N.C.Gen.Stat. § 168A–2 (1987).

## *DISCUSSION*

### I. SUMMARY JUDGMENT

■ In examining a motion for summary judgment, summary judgment must be rendered if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A party seeking summary judgment has the "burden of showing the absence of a genuine issue as to any material fact...." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Pachaly*

*v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990); *De Leon v. St. Joseph Hosp., Inc.,* 871 F.2d 1229, 1233 (4th Cir.1989), *cert. denied,* 493 U.S. 825, 110 S.Ct. 87, 107 L.Ed.2d 52 (1989). More specifically, when the movant supports his motion for summary judgment with affidavits or other evidence that show that there is no genuine issue as to any material fact, then the adverse party may not rest upon the mere allegations or denials of his pleadings, but his response by affidavits or other evidence must set forth specific facts showing there is no genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ In other words, the nonmoving party must provide sufficient evidence to prove that a reasonable jury would find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the evidence, all inferences are to be assessed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *United States v. Lee,* 943 F.2d 366, 368 (4th Cir.1991).

### II. REASONABLE ACCOMMODATION

■ Gower first challenges his termination under the Americans with Disabilities Act. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual...." 42 U.S.C. § 12112(a). In order to establish a case of disability discrimination, Gower must show the following three criteria: (1) that he has a "disability," (2) that he was "qualified" for the job, and (3) that Wrenn's termination constituted an unlawful "discrimination" based on his disability. *Tyndall v. Nat'l Educ. Centers,* 31 F.3d 209, 212 (4th Cir. 1994).

Since it is undisputed that Gower's torn rotator cuff constitutes a "disability", the Court will proceed to the second element, that is, whether Gower was a qualified individual who was reasonably accommodated. The ADA defines a "qualified individual with a disability" as an "individual who, with or without reasonable accommodation, can per-

form the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Discrimination includes failure to reasonably accommodate which may include, *inter alia,* reassignment to a vacant position. 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(*o*)(2).

█ It is undisputed that with or without reasonable accommodation Gower could no longer perform the essential functions of road service technician because his doctor failed to issue a release so that he may return to work. Therefore, the Court does not need to address whether Gower was "qualified" for the road service technician position. The dispute lies with whether Wrenn failed to "reasonably accommodate" Gower by adequately considering whether Gower was qualified for the CSR position.[1] (Pls.Compl. ¶ 11; Defs.Ans. ¶ 11.) Since the Court finds that there is a disputable fact as to whether Wrenn reasonably accommodated Gower by adequately considering him for the CSR position, the Court will first proceed to the "reasonable accommodation" requirement of the ADA before discussing the "qualified individual with a disability" requirement.

Gower claims discrimination under the ADA to the extent that Wrenn failed to reasonably accommodate him when Wrenn failed to give him adequate consideration for the CSR position. Due to his extensive selling experience as a road service technician, Gower further asserts that Wrenn had a duty to reasonably accommodate him by inspecting his personnel file for his qualifications.

In rebuttal, Wrenn maintains that the essential functions of the CSR position consisted of performing "outside sales" or cold calling to customers who did not have the equipment in front of them. (Robertson Aff. ¶ 3; Robertson Dep. at 98–99.) Wrenn further argues that it gave sufficient consideration to Gower and after comparing Gower's credentials to Moore, Moore was the more qualified applicant for the CSR position. (Robertson Dep. at 98–99.)

However, the evidence suggests otherwise. For instance, since Gower was not able to return to his job as a road service technician, on January 6, 1993, Gower decided to meet with Holmes and Robertson to inquire about any other open positions at Wrenn. (Pl.'s Compl. at ¶ 10; Def.'s Answer ¶ 10.) During this meeting, both Holmes and Robertson told Gower about the parts-clerk position and the CSR position. (*Id.*) Gower expressed interest in both positions. (*Id.*) However, on the very same day, January 6, 1993, Wrenn sent out a COBRA eligibility form confirming Gower's termination on December, 1, 1992. (*Id.*) Gower received the CO-BRA form on January 7, 1993. (*Id.*) Given the brief time period from Gower being informed of the CSR vacancy, his expressing an interest in the job, the actual hiring of Moore for the CSR position, and Wrenn notifying Gower of his termination, a reasonable jury could find that Wrenn did not adequately consider Gower for the CSR position.

On the secondary question of the qualifications of Gower, Gower argues that if Wrenn had inspected Gower's personnel file, it may have found that Gower was qualified for the CSR position. For instance, Gower had prior management and sales experience as a road service technician. (Pl.'s Ex. 7.) Gower was the second highest road service technician salesman during the years of 1990–1991. (Pl.'s Ex. 27.) Gower was very familiar with Wrenn's products and services and had earned substantial bonuses from selling Wrenn's products. (Gower Dep. at 86–88; Pl.'s Ex. 27.) Gower was a very good technician who was well respected. (Robertson Dep. at 29, 98–99.)

Although Gower's position, as a road service technician, did comprise of incidentally selling parts in conjunction with repairs, Wrenn has not shown that Gower could not have performed the essential functions of CSR. (Robertson Dep. at 92–93.) In fact, Gower's torn rotator cuff would not have had an effect on Gower's performance as Wrenn's CSR. Also, there is no evidence to suggest that selecting Gower for the CSR job would

---

1. Since the parts-clerk position never became available, the Court does not need to address whether Gower was qualified for the parts-clerk

position for purposes of the ADA. (Holmes Aff. ¶ 9.)

have created a hardship for Wrenn. When considering the evidence in the light most favorable to Gower, Gower has provided sufficient evidence that Holmes and Robertson may have failed to reasonably accommodate him by inspecting his personnel file, and thus, seriously considering him for the CSR position.

As to the third element, since Gower has shown that there is a disputable fact as to whether Wrenn sufficiently considered him for the CSR position, the Court finds that a reasonable jury should consider whether Gower's termination constituted an unlawful discrimination based on his disability. As set out above, reasonable accommodation can include reassignment to a vacant position. 42 U.S.C. § 12111(9)(B); 29 C.F.R. 1630.2(o)(2)(ii). Here, Gower has established sufficient evidence that with "reasonable accommodation" he may have been "qualified" for the CSR position. In addition, Gower has provided sufficient evidence from which a jury may find that Wrenn's use of its absenteeism policy as a justification for the termination may have been merely a pretext, and that the real reason for his discharge and Wrenn's failure to consider Gower for the CSR position was his disability. The Court does not hereby attempt to substitute its judgment for that of Wrenn on the question of which person, Gower or Moore, was the more qualified for the CSR job. However, the Court cannot find that the evidence proffered by Wrenn clearly establishes that it met the threshold requirement of providing "reasonable accommodation" to Gower by at least considering him for the vacant CSR position.

Since there is a disputable material fact as to whether Wrenn gave "reasonable accommodation" by sufficiently considering Gower for the CSR position, Wrenn's Motion for Summary Judgment is denied with respect to violation of the ADA.

## II. GOWER'S SON'S MEDICAL BILLS

■ Gower asserts that Wrenn's termination constituted discrimination based on his association with his son. Gower further argues that Wrenn's termination decision was a result of his son's high medical bills.

Gower's son has an eye disorder which has required several surgeries and possibly more in the future. (Gower Aff. ¶ 2.) The ADA explicitly prohibits discrimination "because of the known disability of an individual with whom the qualified individual is known to have a family, business, social, or other relationship, or association." 29 C.F.R. § 1630.8.

Gower points to the fact that when Holmes became personnel director one of his primary concerns was Wrenn's increasing health care costs. (Pl.'s Reply at 6.) Gower further points to the meeting held by Wrenn on December 17, 1992, to discuss increasing costs of health insurance. (Id.) Gower also relies on the fact that at a Christmas party, earlier in December, he had mentioned to Robertson his problems receiving payment for his son's medical bills. (Id.) During the December 17, 1992, meeting with Holmes and Robertson, Gower also mentioned the same problems. (Gower Aff. ¶ 4.) Gower points to these incidents to support his allegation that he was terminated because of the costs of his son's medical expenses.

Gower's argument has some merit. Gower has provided sufficient evidence that his son's medical condition may have prompted his termination. First, it is undisputed that prior to Gower's termination, Wrenn had expressed serious concerns about decreasing its health care costs. (Pl.'s Reply at 1–2; Def.'s at 4.) Second, on at least two occasions, prior to his termination, Gower had mentioned his son's medical bills. (Gower ¶ 4; Robertson Dep. at 7, 25.) During these conversations, Gower expressed concern about obtaining payment for his son's medical bills. (Id.)

Furthermore, as set out above, at the meeting on December 17, 1992, Gower brought his son's medical expenses to Holmes' attention, and once again to Robertson's attention. On December 22, 1992, five days later, Holmes and Robertson began to initiate the termination paperwork which was prior to Gower's revisit to his physician. (Pl.'s Ex. 22.)

It is unclear whether backdating the termination date to December 1, 1992, was intended to have any effect on Gower's medical

benefits. (Pl.'s Ex. 23.) The jury may find that the backdating of Gower's termination in combination with Wrenn's knowledge of Gower's son's medical difficulties could have been motivated by Wrenn's desire to avoid incurring any additional expenses for Gower's son.

All of these facts preclude the Court from finding that material dispute of fact does not exist as to whether Gower's son's medical bills may have affected Wrenn's decision to backdate the termination date. Furthermore, Gower has demonstrated a genuine issue of material fact as to whether his termination may have been related to the costs of his son's medical condition or treatment in violation of the ADA.

For the reasons stated above, Wrenn's Motion for Summary Judgment is denied.

### III. "RECKLESS INDIFFERENCE"

Gower claims that Wrenn terminated his employment with "reckless indifference" to his rights under ADA. As stated above, all of the facts taken together provide sufficient evidence that Gower's disability and his son's disability could have had an effect on Wrenn's decision to terminate his employment and not to sufficiently consider him for the CSR position. Such facts prevent the Court from finding that no genuine issue of material fact exist as to Wrenn's reason for terminating Gower's employment.

Accordingly, since the Court is denying Wrenn's Motion for Summary Judgment on violation of the ADA, the Court will also deny Wrenn's Motion for Summary Judgment on Gower's "reckless indifference" claim.

### IV. GOWER'S CLAIM OF VIOLATION OF NORTH CAROLINA PUBLIC POLICY

■ Gower's fourth claim is that Wrenn violated his rights under the North Carolina Handicapped Person's Protection Act, N.C.Gen.Stat. § 168A-2.

Since Gower's Complaint pled specifically § 168A-2 as the basis for his claim, Gower's claim is subject to the statute of limitations that applies to § 168A-2. (Pl.'s Compl. ¶ 22.) The North Carolina Handicapped Person's Protection Act § 168A-12 provides that "[a] civil action brought pursuant to this Chapter shall be commenced within 180 days after the date on which the aggrieved person became aware of the alleged discriminatory practice or prohibited conduct." Although Gower was officially aware of his termination on January 7, 1993, when he received the COBRA eligibility form, he did not file this suit until January 31, 1994. However, Gower should have filed this action within 180 days of January 7, 1993, in order to seek relief pursuant to § 168A-2. Gower's claim based upon § 168A-12 is time-barred.

Accordingly, since Gower's claim is time-barred by § 168A-12, Wrenn's Motion for Summary Judgment is granted with respect to Gower's fourth claim of violation of the North Carolina Handicapped Person's Protection Act, N.C.Gen.Stat. § 168A-2.

### CONCLUSION

In summary, considering the evidence in the light favorable to Gower, Gower has sufficiently established a disputable material fact as to whether Wrenn failed to reasonably accommodate him by adequately considering him for the position of customer service representative. Furthermore, the Court finds that Gower has sufficiently established that a dispute of material fact exists as to whether Wrenn unlawfully discriminated against Gower and terminated him because of his "disability" in violation of the ADA.

In addition, Gower has sufficiently established a disputable fact as to whether his termination was related to the costs associated with his son's medical condition or treatment. As to Gower's "reckless indifference" claim, Gower's evidence provides some support, considering all of the circumstances of his termination, for a reasonable jury to find that Wrenn's treatment of Gower was "reckless" and influenced by Gower's "disability." Therefore, Wrenn's Motion for Summary Judgment is denied on Gower's claims of violation of the ADA, discrimination because of his association with his son, and termination with "reckless indifference."

And lastly, since the record is clear that Gower's claim was filed more than 180 days

after the alleged violations of § 168A–2, Gower's claim is time-barred under N.C.Gen. Stat. § 168A–12. Therefore, Wrenn's Motion for Summary Judgment is granted with respect to Gower's claim of violation of N.C.Gen.Stat. § 168A–2.