Charles D. **OSWALD**

v.

**LAROCHE CHEMICALS, INC.**

Civ. A. No. 94–2673.

United States District Court, E.D. Louisiana.

July 24, 1995.

---

Louis Leo Robein, Jr., Robein, Urann & Lurye, Metairie, LA, Joe R. Whatley, Jr., Patrick F. Clark, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL, for plaintiff.

Edward H. Bergin, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, L. Traywick Duffie, Kurt A. Powell, Charlotte Webb, Hunton & Williams, Atlanta, GA, for defendant.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a motion for summary judgment by defendant Laroche Chemicals, Inc. Having reviewed the memoranda of the parties, the record and the applicable law, the Court GRANTS the motion in part and DENIES the motion in part.

### Background

Plaintiff brings this action pursuant to the Americans With Disabilities Act (hereinafter "ADA"), alleging that he suffered from a disability at all relevant times following work-related injuries and that defendant failed to reasonably accommodate him in terms of his disability for employment. (R.Doc. 1.) Plaintiff seeks declaratory relief that defendant's practices are violative of the ADA, injunctive relief, compensatory and punitive damages, back pay, costs and expenses and attorneys' fees. *Id.*

Defendant answered, denying that plaintiff was "disabled" under the ADA, contending, among other things, that certain of plaintiff's claims were time-barred, and generally denying that it discriminated against plaintiff under the ADA. (R.Doc. 16.)

Certain facts are undisputed.[1] Plaintiff had been employed by defendant or its predecessor since 1965. In April 1991 plaintiff suffered an on-the-job injury where he was caused to fall backwards off an elevated bar on which he was standing. At the time of his injury, plaintiff was working as a "cell repairer."

Following his injuries, he was initially allowed to return to work but was shortly thereafter restricted from work[2] and began receiving workers' compensation benefits. Thereafter, in December 1991, plaintiff underwent a "functional capacities evaluation" (hereinafter "FCE"), after which the physical therapist did not release the plaintiff to return to work but recommended that he undergo work hardening and biofeedback to overcome his fear of heights. Following his discontinuance of biofeedback therapy in February 1992, plaintiff could only climb two rungs of a ladder without anxiety and fear.

In June 1992 plaintiff began undergoing treatment with Dr. Candy Lawson, a doctor of psychology, which treatment continues to date. During this entire time plaintiff has continued to exhibit his fear of heights which prevents him from climbing.

In October 1992, plaintiff's union representative (Julius Laiche), two vocational consultants (Elier A. Diaz and Dené Mathes), representatives of defendant (including Tony Segrest, defendant's Labor Relations Manager) and plaintiff met to discuss plaintiff's reemployment opportunities. Certain jobs were identified as positions in which plaintiff might have been able to work, including lab

---

1. The Court gleans these undisputed facts from the memoranda of the parties, the complaint and the answer. The Court notes that the parties failed to file any statement of material facts as to which there is no dispute as required by Local Rules 2.09 and 2.10E.

2. The parties dispute the reason for this restriction. Citing the plaintiff's deposition, defendant contends that plaintiff was diagnosed with a foot sprain. (Defendant's memorandum in support, p. 3, R.Doc. 27.) In opposition plaintiff cites a doctor's deposition for the proposition that plaintiff was diagnosed with chronic pain syndrome. (Plaintiff's memorandum in opposition, p. 2, R.Doc. 38.) However, this dispute is neither relevant nor material to the instant motion.

technician and loading technician with the latter position modified so that plaintiff would perform the valve repair duty of that position. The job of lab technician was visually inspected at that time; for the job of modified loading technician, Mr. Diaz completed a written and videotaped job analysis, which was sent to Dr. D.J. Scimeca, the defendant's medical review officer. However, this job was later determined to be beyond plaintiff's physical capacity.

At this time, in November 1992, Dr. Scimeca gave plaintiff a release to return to work with the following restrictions: no repeated bending, stooping or squatting; no lifting, pushing or pulling over 30 pounds; no overhead duty; and no working on a ladder.

In February 1993 plaintiff underwent another FCE, this time to determine if plaintiff was able to perform the valve repair work of the modified loading technician position. The physical therapist who performed the FCE concluded that plaintiff could perform the job. Among the items reviewed by the physical therapist were the written and video analysis of the job completed earlier by Diaz.

However, Dr. Scimeca refused to release plaintiff for work at this position following an in-office examination of plaintiff.

The defendant also considered whether plaintiff could perform his former job of cell repairer but this option was eliminated, as were other jobs, allegedly due to plaintiff's inability to perform them because of the requirement of overhead work or due to plaintiff's physical restrictions.

Defendant brings the instant motion contending it is entitled to summary judgment for the following reasons:

1) certain of plaintiff's claims are time-barred;

2) plaintiff was not a "qualified individual with a disability" under the ADA because he was not qualified to return to his position as a cell repairer and was not qualified for the modified loading technician position;

3) transferring plaintiff to another position at the plant was not a reasonable accommodation because there were no vacant positions to which defendant could transfer plaintiff;

4) defendant exceeded its duty to plaintiff under the ADA;

5) the law and facts limit damages that plaintiff can be awarded due to his receipt of workers' compensation and/or disability payments; and

6) defendant's good-faith efforts to accommodate plaintiff preclude the award of punitive damages.

Plaintiff does not oppose certain of defendant's arguments as to his claims being time-barred. In regard to those contentions, which will be explained in more detail *infra*, summary judgment will be granted. However, plaintiff opposes summary judgment on each of the other grounds raised by defendant.

## Law and Application

### I. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When a moving party satisfies the requisites of Rule 56(c), a motion for summary judgment should be granted. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The inferences drawn from the underlying facts, however, must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The substantive law determines materiality of facts, and only facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In a more specific sense, summary judgment is appropriate when a party fails to make a showing sufficient to establish the existence of an element necessary to prove

the party's case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. Of course, the converse is true: if the nonmoving party sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented.

The Court now turns to the merits of the arguments with these standards in mind.

II. Time-barred Claims

■ Defendant contends that certain of plaintiff's claims are time-barred for two reasons. First, defendant contends that to the extent that any allegations relate to events which occurred 180 days prior to his filing a charge of discrimination, these events are time-barred. Second, defendant contends that any events which allegedly occurred after May 20, 1994, the date the Equal Employment Opportunity Commission (hereinafter "EEOC") closed its investigation and issued a Notice of Right to Sue upon plaintiff's claims also are time-barred. Plaintiff opposes only defendant's first argument. Therefore, summary judgment is granted as to any events which may have occurred after May 20, 1994.[3]

However, plaintiff opposes defendant's first argument on the basis that any violations of the ADA that occurred more than 180 days prior to his filing a claim with the EEOC constitute a continuing violation of those acts which fall within the 180–day period.

■ Before addressing this issue, the Court holds initially that any conduct of the defendant that predates July 26, 1992, the effective date of the ADA, is not a basis for liability because the ADA is not retroactive. *O'Bryant v. City of Midland*, 9 F.3d 421, 422

(5th Cir.1993). *See Anzalone v. Allstate Insurance Company*, 1995 WL 21672 at *2 (E.D.La.1995) (Vance, J.).

As to the issue regarding events occurring prior to the 180 days before plaintiff filed his EEOC complaint,[4] it is undisputed that plaintiff filed his EEOC complaint on August 19, 1993, alleging an act of discrimination on February 25, 1993. (Exh. F attached to defendant's memorandum in support.)[5] Thus, pursuant to 42 U.S.C. § 2000e–5(e), defendant argues that plaintiff is time-barred from alleging any acts of discrimination that occurred prior to that February 20, 1993, the beginning of the 180–day period.

In opposition plaintiff contends that the only type of discrimination which he alleges now or has ever alleged is that of failure to accommodate under the ADA and thus, under *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971 (5th Cir. 1983), any acts of discrimination occurring between July 26, 1992, and February 20, 1993, constitute "continuing violations" of the ADA.

In *Berry* the Fifth Circuit identified three factors as relevant to the determination of whether a continuing violation has occurred but which are not exhaustive. *Id.* at 981.

> The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, of perhaps most importance, is degree of permanence. Does the act have the degree of

**3.** The Court finds that, under the rule of *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970), the scope of plaintiff's judicial complaint is limited to the scope of the EEOC investigation growing out of the charge of discrimination.

**4.** The ADA adopts the enforcement procedures applicable to the Civil Rights Act of 1991, including the requirement that a person complaining to the EEOC of disability must do so within 180 days from the last date that discrimination took place. *See* 42 U.S.C. § 12117, adopting 42 U.S.C. § 2000e–5.

**5.** In the record, Exhibits A through I are actually attached to another motion pending before the Court, *i.e.*, defendant's motion for a bench trial. (R.Doc. 25.) Apparently, these exhibits were attached to the wrong motion upon filing. However, the Court will assume that the defendant meant to attach these documents to its motion for summary judgment because they relate to that motion and not to the motion requesting a non-jury trial.

permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate? As noted, the particular context of individual employment situations requires a fact-specific inquiry by a trial judge which cannot be reduced to a formula ... however, ... consideration of the above factors will generally be appropriate....

*Id.*

■ Applying these factors to the present case, the Court finds that there is a genuine issue of material fact precluding summary judgment on this issue. First, as plaintiff points out, the alleged discrimination only involves discrimination for failure to accommodate under the ADA. Second, the alleged acts were recurring, happening before February 20, 1993, and after.

Third, on the record before the Court, the Court finds that the events occurring prior to February 1993 lack the "permanence" that would have triggered plaintiff's awareness of his right and duty to assert his rights. The alleged acts of failure to accommodate arguably took a path, based upon the record as will be set forth in detail hereafter, that seem to show that defendant proposed to allow plaintiff to work at certain jobs and then would rescind that proposal. For example, one of the jobs first discussed for plaintiff was his previous position of cell repairer, but plaintiff was not allowed by defendant to return to this job. As will be seen, however, there is a genuine issue of material fact whether plaintiff could have performed the essential functions of cell repairer. Some time later, defendant was considered for the modified loading technician position, and he was then denied that position within the 180 days before he filed his EEOC complaint. Such a course of events does not evidence a "permanence" such that plaintiff should have been aware to assert his rights such that alleged acts of discrimination prior to February 20, 1993, are time-barred.

**III. Plaintiff Not "Qualified Individual With a Disability"**

Defendant next argues that because plaintiff was not a "qualified individual with a disability" under the ADA, it did not discriminate against plaintiff. Specifically, defendant contends that because plaintiff was unable to perform the essential functions of his former position as cell repairer or any other position, either with or without reasonable accommodation, then plaintiff was not a "qualified individual with a disability."

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. The term "qualified individual with a disability" has a specific definition:

The term ... means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential....

42 U.S.C. § 12111(8).

The first question is whether plaintiff was qualified to return to his job as cell repairer. Defendant's position is that, while plaintiff believes he could have performed the "anode building" duties of the job, he could not have accomplished this task because of overhead required to perform this function and his fear of heights.[6]

In opposition plaintiff contends that the deposition testimony of plaintiff's union representative shows that the cell repairers work on three-man crews and that each cell repairer performs only one—or possibly two—components of the cell repairer position, not all four. (Exh. F., pp. 95–96, plaintiff's exhibits in support of memorandum in

---

**6.** There are four functions to the job of cell repairer: cell change-out, anode building, ca-

thode dip area and wash area. (Plaintiff's deposition, Exh. B., R.Doc. 36.)

opposition, R.Doc. 39.) Further, the cell repairers themselves decide which men will perform which functions. *Id.* The supervisors play no roles in allocating the functions of the cell repairers. *Id.* at p. 115–16. The supervisor of the cell repair area in February 1993 confirmed that managers did not intervene in the distribution of the job functions of the cell repairers. (Exh. G, pp. 19–20, plaintiff's exhibits in support of memorandum in opposition, R.Doc. 39.) Finally, and most importantly for present purposes, the union representative testified that had plaintiff been returned to his position of cell repairer in the anode building function, the cell repair crew "would [have] work[ed] with him, and eventually may [have] actually help[ed] him get over his fear of heights." (Exh. F, p. 125, plaintiff's exhibits in support of memorandum in opposition, R.Doc. 39.)

In view of this testimony and construing its inferences in favor of plaintiff, the Court finds that there is a genuine issue of material fact whether plaintiff could have performed the essential functions of his former job as cell repairer.

The second question is whether plaintiff was qualified for the modified loading technician position. Defendant argues that Dr. Scimeca's refusal to release plaintiff to work in this position unequivocally entitles it to summary judgment, relying on the proposition that when a doctor says an employee is not physically able to perform a function, the employee is not a qualified individual for that function. *See, e.g., Gower v. Wrenn Handling, Inc.,* 892 F.Supp. 724, (M.D.N.C.1995) (attached as G–3 to defendant's memorandum in support, R.Doc. 27).

However, notwithstanding the propriety of this proposition, the Court notes that the judge in *Gower* refused to grant summary judgment, finding a genuine issue of material fact as to whether defendant had reasonably accommodated the plaintiff. Similarly, this Court finds a genuine issue of material fact

as to whether the physical functions that Dr. Scimeca considered—crawling, deep crouching, and performing deep waist bends—were actually necessary for the modified loading technician position. For example, as plaintiff points out, the February 1993 FCE for this modified loading technician position only lists occasional crouching and occasional bending as "critical work demands" and does not even list crawling as a "critical work demand." (Exh. D–16, attached to deposition of plaintiff, Exh. A, R.Doc. 39.) Further, plaintiff testified in his deposition that the physical functions relied on by Dr. Scimeca were not involved in the position of modified loading technician. Finally, defendant's labor relations manager, Mr. Segrest, testified at his deposition that the modified loading technician job did not require crawling. (Segrest deposition, p. 66, attached as Exh. B to plaintiff's motion for leave to file "replacement brief," R.Doc. 43.) Construing the inferences from the February 1993 FCE, plaintiff's deposition and Segrest's deposition in favor of plaintiff, there exist genuine issues of material fact as to whether plaintiff could have performed the essential functions of the modified loading technician position.[7]

The only other specific position discussed is the lab technician position. The plaintiff agrees that plaintiff could not perform the functions of this position. (Plaintiff's memorandum in opposition, pp. 8–9.) Therefore, defendant is entitled to summary judgment as to lack of reasonable accommodation as to this position.

### IV. Vacancies Available

Defendant also seeks summary judgment on the basis that there were no vacant positions in which to transfer plaintiff and, thus, under the ADA, defendant is entitled to summary judgment because an employer does not have a duty to create a vacancy in a position by transferring other people out of a position. This is a correct statement of the law. *See* 42 U.S.C. § 12111(9) ("reasonable

---

**7.** Plaintiff also refers to a job analysis form created by Mr. Diaz which showed that no crawling or kneeling was required for this position and that bending/squatting was only required "1%" of the day. Such an exhibit also would create a

genuine issue of material fact. However, upon review of the record, the Court is unable to locate this exhibit as being attached to the deposition of Mr. Diaz, Exh. D, R.Doc. 39. Therefore, the Court is unable to consider it.

accommodation" includes reassignment to a "vacant position").

Here, too, plaintiff raises a genuine issue of material fact which precludes summary judgment. The union representative, Mr. Laiche, testified in his deposition that several men had left the cell repair area and been replaced from the product loading area, where the loading technicians worked, to fill the positions in the cell repair area. (Laiche deposition, Exh. F, pp. 99–100, R.Doc. 39.) Such a statement prevents the entry of summary judgment.[8]

## V. Essential Elements of Modified Loading Technician Position

Defendant also argues that even had plaintiff been physically able to perform the valve repairer function of the modified loading technician position, it is entitled to summary judgment because the ADA does not require employers to put plaintiff to work by eliminating essential functions of a job. *See* 29 C.F.R. § 1630.2(*o*) (employer not required to "reallocate essential functions of a job as a reasonable accommodation").

However, again plaintiff presents a genuine issue of material fact as to this contention, specifically the deposition testimony of the supervisor of the loading technicians to the effect that loading technicians can elect to perform only one function and that this election is based on their superiority in the union. (Deposition of David McDonald, p. 17, Exh. G, R.Doc. 39.) Mr. Laiche testified that plaintiff had more seniority than most

employees at the plant, including Laiche himself who performed only the valve repair work in this position. (Deposition of Laiche, pp. 116–17, Exh. G, R.Doc. 39.) In view of this testimony, the Court finds that there is a genuine issue of material fact whether defendant would have had to reallocate the essential functions of the modified loading technician position in order for plaintiff to perform the duties of that position.

## VI. Plaintiff Failed to Request Other Accommodations

 Defendant contends it is entitled to summary judgment because the burden is on the plaintiff to show that accommodation was possible to perform the essential elements of the job and because plaintiff has never shown how he could be accommodated.[9] The Court finds, however, in view of the foregoing that plaintiff has shown how he could be accommodated in both the cell repairer and modified loading technician positions.

## VII. Damages

Defendant seeks an order barring payments of back pay should liability be found and/or an order that back pay will be reduced if awarded due to the plaintiff's receipt of workers' compensation pay and/or disability retirement benefits. Defendant also seeks summary judgment on plaintiff's claim for punitive damages. The Court discusses each of these contentions *seriatim.*

### A. Receipt of Workers' Compensation Payments and Disability Retirement Benefits Bar Award of Back Pay

---

**8.** In its reply brief, defendant argues that Laiche also testified that at the point in time when he was discussing vacancies with defendant, it was not hiring any persons and there were no vacancies. (Laiche deposition, p. 34, Exh. A, attached to defendant's memorandum in support, R.Doc. R.Doc. 27.) However, the undisputed facts show that Laiche first had discussions with defendant in October 1992, and it is unclear which time period defendant is referring to when it makes this argument. Furthermore, in Laiche's deposition testimony cited by defendant, Mr. Laiche agrees that the defendant had been decreasing the number of employees through attrition but also states "I could clarify that, but I'll leave that alone for right now." *Id.* at 35. Such a statement leads to the inference that the question was not entirely addressed, which inference weighs against granting summary judgment.

**9.** This is an accurate statement of the law under ADA as construed by the EEOC. *See* EEOC's Technical Assistance Manual for Title I of the Americans With Disabilities Act, § 3.1. (Attached to defendant's memorandum in support, Exh. H, R.Doc. 27.) Courts have recognized EEOC interpretations in construing both the ADA and Rehabilitation Act, 29 U.S.C. §§ 701–796. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993) (turning to EEOC's "Interpretive Guidance on Title I of the Americans with Disabilities Act); *Zatarain v. WDSU–Television*, 881 F.Supp. 240, 243, n. 2 (E.D.La.1995) (Vance, J.) (referring to EEOC's Technical Assistance Manual on the ADA).

Defendant first contends that plaintiff's receipt of $564.00 in workers' compensation benefits biweekly bars any back pay award in this matter, relying for this argument on *Rudisell v. S.H.R.M. Catering Services*, No. 92–3212, Section "N"(4), 1994 WL 50248, 1994 U.S.Dist. LEXIS 1637 (E.D.La. February 10, 1994) (Fonseca, M.J.). In *Rudisell* the Magistrate Judge held that an award of back pay in a Title VII violation is designed to place the plaintiff in the position the worker would have been "but for" the discrimination. *Id.* at *2–3, 1994 U.S.Dist. LEXIS 1637 at *7–8, citing *Sellers v. Delgado Community College*, 839 F.2d 1132, 1136 (5th Cir.1988). Therefore, because the plaintiff had received workers' compensation benefits for total disability, she was not entitled to receive an award of back pay for discrimination. *Id.* at 3, 1994 U.S.Dist. LEXIS 1637 at *8.

In *Sellers* the Fifth Circuit made the foregoing statement cited by the Magistrate Judge but also stated that in the absence of exceptional circumstances back pay should always be awarded when a Title VII violation is found. *Sellers*, 839 F.2d at 1136. "[T]he instances wherein such an award is not granted are exceedingly rare." *Id.* The court of appeals quoted *Albemarle Paper Company v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) for the proposition that back pay "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Sellers*, 839 F.2d at 1136.

■ In view of this statement and the Court's findings set forth above as to summary judgment on liability, the Court fails to find the exceptional circumstances surrounding plaintiff's receipt of workers' compensation benefits such that plaintiff should be denied an award of back pay. Indeed, if liability were to be found, denial of back pay may frustrate the purpose of eradicating discrimination under the ADA.

Turning to defendant's contention that plaintiff should be barred from receiving back pay due to his receipt of disability retirement benefits, defendant relies on *Reigel v. Kaiser Foundation Health Plan*, 859 F.Supp. 963 (E.D.N.C.1994) in support of this argument. There, the district court found that plaintiff's statements made "to secure disability benefits" which tended "to establish that plaintiff and her physicians perceive[d] her injury to be totally disabling" established that plaintiff was not qualified to perform the essential functions of her job and, as a result, was not disabled under the ADA. *Id.* at 969–70.

■ A review of the facts upon which defendant's contention is based, however, convinces the Court that the present factual situation is different from *Reigel* and that there is a genuine issue of material fact as to this issue that prevents the entry of summary judgment. Defendant relies on plaintiff's deposition testimony and his answers to interrogatories as evidence that plaintiff voluntarily pursued disability retirement in September 1994 and began receiving payments in October 1994. (Plaintiff's deposition, p. 220, attached to defendant's "replacement brief," R.Doc. 36; plaintiff's response to defendant's interrogatory No. 8, attached as exhibit I to its original memorandum in support, R.Doc. 27.) The deposition testimony indicates that Dr. Scimeca's conclusion that plaintiff could not perform any jobs formed the basis of the grant of disability retirement to plaintiff. As discussed above, there is a genuine issue of material fact as to whether Dr. Scimeca properly assessed plaintiff's ability to perform the functions of the modified loading technician position. Therefore, summary judgment is inappropriate on this issue because defendant relies on a premise which itself contains a genuine issue of material fact.

The Court also finds that this case is more akin to *Anzalone v. Allstate Insurance Company*, 1995 WL 35613 (E.D.La. January 30, 1995) (Vance, J.) than *Reigel*. In *Anzalone*, on a motion for judgment on the pleadings, the district court found that defendant's evidence that plaintiff received long-term disability benefits was relevant to whether he could perform essential functions of job with or without reasonable accommodation but was not dispositive of the issue because of

"significant contrary evidence of plaintiff's abilities." *Anzalone*, 1995 WL 35613 at *2. Here, there also exists contrary evidence of whether plaintiff was able to perform the functions of modified loading technician and whether Dr. Scimeca imposed additional physical limitations on that position.

### B. Reduction of Back Pay Due to Receipt of Workers' Compensation

██ Defendant also seeks summary judgment on the issue of whether plaintiff's receipt of back pay, if any is awarded, should be reduced because of his receipt of workers' compensation benefits. The law is clear in this circuit that such a determination is within the discretion of the Court. *Merriweather v. Hercules, Inc.*, 631 F.2d 1161, 1168 (5th Cir.1980). *But see Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550 (11th Cir.1983) (*en banc*) (holding as a matter of law that unemployment compensation benefits received from a state fund may not be deducted from a Title VII back pay award and overruling *Merriweather* as precedent in the 11th Circuit).

Defendant also urges the Court to reject plaintiff's argument that the workers' compensation benefits should not be used to reduce any back pay award to plaintiff because those benefits constitute a collateral source.

In response, plaintiff makes the "collateral source" argument and also attacks the foundation of defendant's argument.

██ Based upon the record before it, the Court finds that it is premature to determine whether to exercise its discretion and reduce the award of back pay, if any, because of the numerous factual disputes delineated above. More evidence is needed in order for the Court to make a determination as to the extent damages, if any are awarded, which will make the plaintiff whole.

The Court pauses to note, however, that the "collateral source" argument has not been adopted as law in this Circuit, and the rule remains that reduction of any award is within the discretion of the trial court.

### C. Punitive Damages

Defendant's final argument is that, because it acted in good faith and met with plaintiff to discuss available accommodations, plaintiff is not entitled to recovery of these damages as a matter of law.

The damages provisions of the ADA provide that damages may not be awarded

where the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and made a reasonable accommodation that would provide such individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

42 U.S.C. § 1981a(a)(3). Further, under 42 U.S.C. § 1981a(b)(1), punitive damages may only be awarded upon a showing that a defendant acted "with malice or with reckless indifference" to plaintiff's rights.

Defendant contends that, because it met with plaintiff and the various other representatives and explored numerous accommodation alternatives, plaintiff is not entitled to punitive damages. Further, plaintiff did not identify any other possible accommodation alternatives, and defendant went above and beyond the requirements of the ADA in attempting to accommodate plaintiff.

██ However, the Court finds that, in view of the genuine issues of material fact set forth at length above, summary judgment is improper as to an award of punitive damages. The Court also notes following testimony by Mr. Segrest, defendant's labor relations manager, which raises additional genuine issues of material fact as to whether defendant acted "recklessly" as to plaintiff's rights:

1) Mr. Segrest knew that Dr. Scimeca never came to the plant to view any of the positions under consideration for plaintiff;

2) Dr. Scimeca relied on representatives of the defendant to apprise him of what was entailed in the positions under consideration for plaintiff;

3) Mr. Segrest could not recall consulting with another of defendant's employees as to accommodating plaintiff in the position of modified loading technician after Dr. Scimeca

refused to allow plaintiff to work in that position; and

4) during the various times at which plaintiff was attempting to return to work, Mr. Segrest only reviewed plaintiff's medical file once. (Deposition of Segrest, pp. 31, 69–71, and 78, attached as Exh. B to plaintiff's motion for leave to file "replacement brief," R.Doc. 43.)[10]

VIII. Conclusion

The Court believes that summary judgment is appropriate as to three issues. First, defendant is entitled to summary judgment as to any claims of discrimination that may have occurred prior to the effective date of the ADA. Second, summary judgment is proper as to any discriminatory events that may have occurred after May 20, 1994, the date the EEOC ended its investigation and granted plaintiff his right to sue. Third, summary judgment is appropriate as to any allegations relative to failure to accommodate plaintiff in the position of lab technician.

In all other respects, however, summary judgment is inappropriate because there exist genuine issues of material fact.

Accordingly,

IT IS ORDERED that the motion for summary judgment by defendant Laroche Chemical, Inc., is GRANTED IN PART and DENIED IN PART.

---

10. While summary judgment is inappropriate on this issue, the Court does not find any evidence of malice on the part of defendant.